## ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

### *v.* DILLARD.

### Opinion delivered April 23, 1906.

1. RAILROAD CROSSING—DUTY OF TRAVELER TO LOOK AND LISTEN.—While it is the duty of a traveler approaching a railroad crossing to look and listen for trains from both directions, yet, if it appears to him as a reasonably prudent person that greater danger is to be apprehended from one direction than from the other, he may give more attention

to that end of the track from which he apprehends the greater danger, and to that extent may relax his vigilance as to the danger from the opposite direction. (Page 523.)

2. SAME—DUTY TO LOOK BOTH WAYS.—Where a traveler, on approaching a railroad crossing, brought his team to a standstill 25 feet distant from the track, and carefully looked and listened both ways, and no train was in sight for a distance of 200 yards to the west, and none in hearing, and he started across, meanwhile listening for trains and looking toward the east, whence he specially apprehended danger, and was struck by a train coming from the west, the question whether he was guilty of contributory negligence in failing to look to the west while going that short distance was properly submitted to the jury. (Page 525.)

3. INSTRUCTIONS—REPETITION.—It was not error to refuse instructions asked if the court had already given specific instructions on the same subject. (Page 526.)

Appeal from Franklin Circuit Court, Ozark District; *Jeptha H. Evans,* Judge; affirmed.

*Oscar L. Miles,* for appellant.

1. Under the proof in this case, the physical facts and surroundings of the plaintiff contradict and annul his claim. He was guilty of negligence which contributed to his injury. 4 Elliott on Railroads, § 1703; 38 S. W. 311; 63 S. W. 362; 30 Am. & Eng. Rd. Cas. (N. S.), 94; 23 *Ib.* 373; 67 N. W. 1120; 75 N. W. 169; 65 N. W. 852; 77 N. W. 179; *Ib.* 729; 74 N. W. 360; 70 N. W. 687; 78 N. W. 585; *Ib.* 1084; 80 N. W. 644; 82 N. W. 295. It is settled that a person about to cross a railroad track must look and listen for approaching trains and when, by the due exercise of care in this respect, the danger could have been discovered and avoided no recovery can be had. 65 Ark. 238. And he must continue on his guard against trains from both directions until the danger is past. 69 Ark. 138; 65 U. S. 697; 82 Fed. 217; 130 Fed. 839; 130 Fed. 65; 62 Ark. 158.

2. The case should be reversed for refusal of the court to specifically in each instance state what the law applicable to each phase of the case was. 69 Ark., *supra.*

*Sam R. Chew,* for appellee.

Appellee's duty on approaching the track to keep a constant lookout for approaching trains was fully submitted to the jury in the second and third instructions of the court. Whether or

not he complied with the duty imposed on him by law as set out in the instructions was a question of fact for the jury to determine from the evidence. If the evidence was legally sufficient, the verdict will stand. 57 Ark. 574; 51 Ark. 324. Upon the contention by appellant that the physical facts of this case contradict the plaintiff, upon the theory that to look was to see and to listen was to hear, it is submitted that the facts in the cases cited are so dissimilar as to be inapplicable. "But, assuming that appellant did in fact hear the approaching train, it does not follow that he was guilty of negligence in proceeding on his way." He could rely on the presumption that appellant would obey the law and notify him of its approach by ringing the bell or sounding the whistle. 88 Mo. 306; 56 Ark. 457. Though a traveler upon the highway is required to make every reasonable effort to see and hear an approaching train, yet he is not, as a matter of law, bound to see and hear it. Whether or not he did see or hear, and used ordinary care in attempting to cross a railroad track at a public crossing, are all questions for the jury. 24 Am. & Eng. R. Cas. 473; 64 N. Y. 524; 76 Pa. St. 157; 69 Ark. 134.

McCulloch, J. Appellee, David G. Dillard, sues to recover damages caused by being run over and injured by appellant's train while he was crossing the railroad track in the town of Coal Hill, in Johnson County.

The only question in the case is whether or not he was guilty of contributory negligence in crossing the track in front of an approaching train without observing the necessary precaution of looking and listening for trains. The case was tried upon the testimony of the plaintiff alone as to the details of the injury—no other witness testified as to the occurrence.

The circumstances, as detailed by the plaintiff on the witness stand, were substantially as follows:

The plaintiff was engaged in hauling coal, and on the day of the injury, about 5 o'clock in the afternoon, he was in a two-horse wagon, and drove across the railroad track at a public street crossing in the town. The track at that place runs east and west, and crosses the public street at right angles. Plaintiff was going north, and the train which struck him was crossing from the west. It was running at full speed (about 40 miles per hour), and no signals were given. As plaintiff approached the

crossing, he passed between two houses, one on either side of the public road, the one on the west side being about 50 or 60 feet from the main track of the railroad, and the one on the east side being about 25 or 30 feet from the track. When he passed the house on the west side, he could see down the track in that direction about 150 yards. He looked in that direction, but neither saw nor heard a train, and continued to listen and to look in that direction until he passed the house on the east side. He could then see down the track towards the west about 200 yards. He testified that, as he passed the house on the east side, which put him in about 25 or 30 feet of the main track, he checked his team almost to a standstill, looked up and down the track in each direction, and listened for sound of a train, and, neither seeing nor hearing a train, he released the brakes on his wagon and attempted to drive across the track. He stated that, after passing the last house and after looking both ways, he then turned his attention toward the east, where cars were always switching, and where he expected danger, and that he continued to listen, but did not again look toward the west until the front wheels of his wagon reached the main track, when he again looked to the west, and discovered the approaching engine about 60 yards distant; that it was then too late to turn back, and he whipped up his horses in the attempt to cross, but that the engine struck the rear end of the wagon, and overturned it, and threw him out.

It is contended on behalf of the appellant that if the appellee had looked constantly toward the west he would have discovered the approaching train in time to have avoided being injured, and, having failed to do so, the court must say, as a necessary conclusion from this fact, that he was guilty of negligence.

The proof narrows the omission of appellee to look toward the west down to the period of time consumed in driving about 25 feet after he had checked his team almost to a standstill and looked in that direction where he could see for a distance of about 200 yards, and neither saw nor heard a train coming. The train came in view and was in about 60 yards of him when he looked again. He says that he was listening for a train all the time, and explains his omission to look toward the west during this time by a statement that he was looking eastward where cars were always switching.

Does this necessarily make a case of contributory negligence, or was that a question for determination by the jury?

It is the duty of a traveler approaching a railroad crossing to look and listen in both directions for approaching trains, and to continue his vigilance in that respect until the danger is passed, and he is deemed to have seen or heard that which is plainly to be seen or heard. We have said this so often in recent decisions of this court that the cases need not be enumerated. But the traveler can not look both ways at the same moment, and, as was recently said in a somewhat similar case, "though he was bound to look both ways, the frequency with which he was bound to change his view depended upon circumstances and the probability of danger to be apprehended, and of this the jury were the judges. The law required him to exercise such degree of care in that respect as was reasonably necessary to discover the danger and avoid injury." *Choctaw, O. & G. R. Co.* v. *Baskins, ante,* p. 355.

In another recent case this court approved an instruction which told the jury that it was the duty of the traveler to look and listen for trains from each direction, but that, if it appeared to him as a reasonably prudent person that greater danger was to be apprehended from one end of the track than the other, he may give more attention to that end of the track from which he apprehended the greater danger. *St. Louis, I. M. & S. Ry. Co.* v. *Tomlinson, ante,* p. 251.

The court, in discussing the instruction, said: "The instruction does not relieve such person of the duty to look and listen in both directions, but says he may give more attention to the end of the track from which the greater danger is apprehended. This is reasonable, and in accordance with that prudence and care which an ordinarily prudent person would exercise."

It necessarily follows from this that when the circumstances are such as to justify the traveler in giving more attention to the direction in which danger is most to be apprehended, he may, to that extent, relax his vigilance in the direction in which danger is least to be apprehended. When strict attention is demanded, increased vigilance in one direction necessarily requires relaxation of vigilance, to that extent, in the other direction. We would not be understood to mean that a reasonable apprehension

of increased danger in one direction will justify an abandonment of vigilance in the other direction. On the contrary, we say that the obligation rests upon the traveler to constantly maintain his vigilance in both directions, as far as reasonable prudence demands; but this does not mean that he is bound under all circumstances to instantly turn from one direction to the other. If this was the legal requirement, the traveler would be the absolute insurer of his own safety; and if he crosses the railroad track at all, it would be at his own risk, regardless of any negligence on the part of the railroad employees.

Now, in this case we are asked to say, as a matter of law, that, though the plaintiff brought his team almost to a standstill in 25 or 30 feet of the track, and carefully looked and listened both ways up and down the track, and no train was in sight for a distance of 200 yards to the west, and he started across, meanwhile listening for trains and looking toward the east where he especially apprehended danger, he was guilty of negligence in failing to look again toward the west while going that distance toward the track. To so hold would be, we think, to make the traveler the insurer of his own safety and deprive him entirely of the right of recovery for injury caused by negligence of the railroad company unless he kept his eyes turned every moment, under all circumstances, towards the direction from which the train came. It is probable, from the speed at which the plaintiff says he was moving after he passed the last house and started toward the track, that less than a fourth of a minute was consumed in traveling the distance of 25 or 30 feet to the point where he again looked toward the west. Meanwhile he was listening for trains, and was looking in the other direction where he expected switching cars. We will not say, as a matter of law that under those circumstances he was guilty of negligence in failing, during the short space of time which intervened, to again look toward the west. That was a question, under the circumstances, for the jury. It was fairly submitted to the jury, and their verdict acquitting the plaintiff of negligence is binding upon us.

It is insisted that the statements of plaintiff were contradicted by physical facts, and should therefore have been rejected by the jury. Such, however, is not the case. Of course, he could have seen the train if he had been looking in that direction at the mo-

ment, but the train could have come into view and run to the point where he says he first saw it during the short space of time while he was traveling 25 or 30 feet. So, it is not a question whether he spoke the truth when he said that he did not see the engine until it approached in about 60 yards of him, but whether he was, under the circumstances, negligent in failing to look in that direction during that space of time.

The court, on its own motion, gave the following two instructions upon the subject of contributory negligence:

"2. Contributory negligence is the want of that care which the law requires of a plaintiff under the circumstances, and which causes or contributes to the injury sued for. Now, the question for you is, what care for his own safety did the law require of the plaintiff? On that subject I tell you that the law required of him that he should, before attempting to cross the railroad track, listen and look both ways, up and down the track, for approaching trains, and to continue to so look and listen until the crossing was passed; and if he failed to do so, and such failure caused or contributed to his injury, he can not recover.

"3. By the requirement of looking up and down the track for all approaching trains, it is intended that the traveler, as far as an ordinarily prudent and careful man can do, shall have constantly under his eye the whole track, as far as his powers of vision will permit, in order that he may avoid going upon the track at a time when there is danger of his being injured, and the law required the plaintiff in this case to do that, as well as to constantly listen for trains, and if the plaintiff, from the proof, did not do so, then he can not recover; otherwise, he can."

These instructions, in our opinion, fully covered the law of the case on that subject. There was therefore no error in refusing instructions asked by appellant. The same question is not involved here, as in *St. Louis & S. F. Rd. Co.* v. *Crabtree*, 69 Ark. 138, where the court gave general instructions on the subject of the duty of a traveler to look and listen for trains, and refused to give more specific instructions applicable to the particular facts of the case. The instructions given by the court were sufficiently specific to apply to all the facts of the case, and further instructions in varying form and language were unnecessary. The court

is not bound to multiply its instructions on the same subject, and it is bad practice to do so, as calculated to mislead the jury.

We find no error in the record, and the judgment is affirmed.