## St. Louis, Iron Mountain & Southern Railway Company *v.* Coleman.

### Opinion delivered January 16, 1911.

1. Appeal and Error—Conclusiveness of Verdict.—In testing the legal sufficiency of evidence to support a verdict, the strongest probative force should be given to it in support of the verdict. (Page 442.)

2. Trial—Sufficiency of Evidence.—If there be a conflict in the testimony on the material points in issue in a case, or if different conclusions may be drawn from undisputed testimony, it is the duty of the trial court to submit the issues to a jury. (Page 442.)

3. Same—Sufficiency of Evidence—Duty of Court.—The legal sufficiency of the evidence in a case is one of law for the decision of the court; and when the facts are undisputed, and different minds cannot reasonably draw different conclusions therefrom, it becomes the duty of the court to declare the result. (Page 442.)

4. Negligence—When Contributory Negligence Question of Law.—The general rule is that it is negligence as matter of law for one approaching a railroad crossing to fail to look and listen for the approach of trains, and only in exceptional cases is it proper to submit to the jury the question whether or not the failure to exercise such caution constitutes negligence. (Page 442.)

5. Railroads—Injury at Crossing—Contributory Negligence—Where, in an action for negligently killing plaintiff's intestate, there was nothing to distract the attention of such intestate, and the evidence established that he could have seen defendant's approaching train in time to avoid being hurt if he had been looking, it was error to submit to the jury the question whether he was guilty of contributory negligence. (Page 442.)

Appeal from Crawford Circuit Court; *Jeptha H. Evans,* Judge; reversed.

*Lovick P. Miles,* for appellant.

The court should have directed a verdict for appellant. Deceased was a trespasser when he elected to cross the tracks of the appellant company at a point other than one of the crossings provided by appellant as required by statute, Kirby's Dig., § 6681, as amended by act approved February 14, 1905. 83 Ark. 301. He was also guilty of contributory negligence, such as to bar recovery, as appears by all the testimony, the circumstances, his knowledge of the movements of the trains at this point, his failure to look in the direction from which this train was coming, the distance from which it could be seen, and the fact that there

was nothing to cause him to give his attention to anything ap-
proaching from the other direction.  78 Ark. 520; 74 Ark. 372;
82 Ark. 522; 150 U. S. 245; 174 U. S. 379; 95 U. S. 697; 61
Ark. 549; 78 Ark. 360; 94 Ark. 524; 69 Ark. 134; 85 Ark. 532;
93 Ark. 24; 63 Ark. 65.

*Davis & Pace, U. L. Meade* and *Hamlin & Seawel,* for ap-
pellee.

1.  Deceased was not a trespasser.  The path he was follow-
ing had been in daily use by the public for ten years, without ob-
jection on the part of appellant.  He was a licensee, and appellant
owed him the duty of using ordinary care to prevent the injury.
Moreover, this question of fact was submitted to the jury under
proper instructions of the court, and their verdict is final.  89 Ark.
103; 81 Ark. 191; 85 Ark. 326; 113 Pa. St. 162; 94 Fed. 323;
104 N. Y. 362; 58 Wis. 646; 30 Ky. Law Rep. 172; 22 *Id.* 501;
123 N. Y. 645; 104 N. Y. 362; 3 Elliott on Railroads, § 1252;
33 Cyc. 965.

2.  The alleged contributory negligence of deceased should
not have been declared as a matter of law.  Such a declaration
is justifiable only when the uncontradicted evidence clearly and
unmistakably points to but one conclusion—that of the negligence
of the injured party; and where, as in this case, the evidence is
such that reasonable persons might form different conclusions
therefrom, it is a question for the jury.  90 Ark. 23; 16 L. R. A.
(Mo.) 189, 196; 20 Atl. 976; 53 N. Y. 654; 96 N. Y. 676; 78
Ark. 520; *Id.* 355, 360; 79 Ark. 241, 244, 246; 90 Ark 19, 22;
96 Ark. 243; 77 Wis. 247; 144 U. S. 408; 28 N. E. (Mass.)
911; 125 N. Y. 526; 158 Pa. St. 82; 49 Pa. 60; 19 L. R.
A. 563; 17 Mich. 118; 92 Pa. St. 338; 35 Pa. 60; 115 Pa.
135; 36 N. Y. 132; 67 Barb. (N. Y.) 205-6; 73 Me. 591, 594;
80 Ia. 172, 177; 32 How. Pr. 61, 84.  If, from the evidence, there
is any doubt of injured party's negligence, such doubt should go
to the jury for solution.  131 Pa. St. 184, 188.  A traveler is not
absolutely bound to see an approaching train, but only must make
all reasonable efforts to do so.  33 Cyc. 1003.  He is not bound
to be prepared against an act of negligence on the part of the
railroad company.  94 Mo. 150; 52 Mo. 257.  He may assume that
the train will be properly operated.  20 Atl. 976; 45 Am. & Eng.

Ry. Cases, 163; 61 Cal. 326; 56 Ark. 459; 59 Tex. 330; 45 Mo. App. 535.

McCulloch, C. J. Plaintiff, A. B. Coleman, as administrator of the estate of W. E. Coleman, deceased, sues the St. Louis, Iron Mountain & Southern Railway Company to recover damages sustained by reason of the death of his intestate, which the complaint alleged resulted from the negligence of defendant's servants in the operation of a train. W. E. Coleman was run over and killed by the engine and caboose of a work train on one of the main tracks within the city of Little Rock. He was attempting to cross the tracks along a path between Fifteenth and Sixteenth streets which, according to the testimony, had been habitually used by the public for several years as a pathway. The railroad has double tracks along there which lie north and south, the west tracks being used for southbound trains and the east track for northbound trains. There is a spur track curving off to the northwest which runs to a warehouse west of the tracks. It was at the frog where this spur connects with the west main track that the accident occurred.

The path lies across two vacant blocks, and extends southeasterly from Fifteenth Street on the west side of the railroad to Sixteenth Street on the east side of the railroad, crossing the west track at the frog of the spur. Coleman was coming from the west side, and was about to cross over to the east side when he was struck and killed. He was traveling southeast, and the engine which struck him came from the north. It was running at a speed variously estimated by the witnesses of from 20 to 35 miles an hour. No alarm signals were sounded until just before the engine struck him. The tracks sharply curve into a deep cut 225 yards north of the point where the injury occurred, so that the view was obstructed until the engine came out of the cut. The tracks were perfectly straight and unobstructed to the south for a distance of at least three-fourths of a mile. Two box cars stood on the spur a short distance from the west track, but, according to the testimony, there was a clear space of about 20 steps along the path after passing the end of the box cars, so as to give an unobstructed view up the track.

The injury occurred about 7 o'clock in the morning of August 23, 1909, as deceased was going from home to his work-

shop, and he died about 5:30 in the afternoon of the same day. Witnesses who reached his side immediately after the accident testified that he exclaimed "Oh, how careful I was! I looked up and down the track before I got on it, and I didn't see anything, and I put my left foot on the track before he whistled at me."

The main track of the Chicago, Rock Island & Pacific Railroad was east of these tracks and parallel with them, and one of the witnesses testified that deceased stated just after his injury occurred that he was looking at a Rock Island train going north, and did not hear the engine coming behind him. The witness closest to deceased, a boy thirteen years of age, introduced by plaintiff, testified that he was working at a sandpile near the end of the box cars on the spur, and saw the deceased pass along; that the latter looked up and down the track just after he passed the end of the box car, then walked the distance of about 20 steps, and just before stepping on the track he again looked up the track in the direction the engine came from.

According to the undisputed evidence, deceased, in approaching the track, walked a distance of about 20 steps with an unobstructed view up the track, and meanwhile the engine came a distance of 255 yards from the mouth of the cut before striking him. It was broad daylight, and the engine was in plain view, and could have been seen by the deceased if he had looked in time. The noise of the engine might have been drowned by the noise of the Rock Island train—the jury could have so found from the evidence—but nothing prevented him from seeing the engine if he had looked. Under this state of facts, should we say as a matter of law that deceased was guilty of contributory negligence?

Counsel for defendant asked the trial court to instruct the jury peremptorily to return a verdict in defendant's favor, on the ground that the undisputed evidence shows that deceased was guilty of contributory negligence which bars recovery. Counsel insist now that the judgment should be reversed on account of the court's refusal to so instruct the jury. No effort was made at the trial to prove that the trainmen saw the perilous position of deceased in time to avoid the injury, and the case was not submitted to the jury on that theory.

This court has frequently announced the rule that in testing the legal sufficiency of evidence the strongest probative force should be given to it in support of the verdict, and that when there is a conflict in the testimony on the material points at issue, or when the testimony, though unconflicting, is such that different minds may reasonably draw different conclusions therefrom, then it is the duty of the trial court to submit the issues to the jury for determination, and on appeal the verdict of the jury should not be disturbed, though it be found to be against the preponderance of the testimony. Cases announcing this rule are so numerous that citation is unnecessary.

On the contrary, the question of the sufficiency of the evidence is one of law for the decision of the court; and when the facts are undisputed, and different minds can not reasonably draw different conclusions therefrom, it becomes the court's duty to declare the result. Chief Justice Cockrill, speaking for the court in *Catlett* v. *Railway Company,* 57 Ark. 461, said: "The terms 'some evidence,' 'any evidence,' 'any evidence whatever' and 'any evidence at all,' as used in the opinions, all mean evidence legally sufficient to warrant a verdict. The legal sufficiency of evidence in that sense is a question of law, and the court must decide it, it matters not when or how it arises."

Now, a railroad track is universally recognized as a place of constant danger, and a traveler along a highway, or a path or road used as such, when about to cross a railroad track, is required to look and listen for approaching trains, and must continue to look and listen until the danger is passed. He must look both ways, up and down the track. *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 134. The court should always declare this duty on the part of a traveler as a matter of law, and only in exceptional cases is it proper to submit to the jury the question whether or not failure to exercise such caution constitutes negligence. *Tiffin* v. *St. Louis, I. M & S. Ry. Co.,* 78 Ark. 55.

There is nothing in the facts of this case to exempt it from the operation of the general rule. Deceased was not misled by any unusual conditions existing at the time. It is true he stated immediately after he was injured that he was looking at a Rock Island train on another track nearby and did not hear the approaching engine. This was on another railroad some distance

on the other side of the tracks he was about to cross, and did not justify him in relaxing his vigilance when crossing defendant's track.  We find no escape from the conclusion in this case that deceased carelessly started over the railroad track without looking for the approaching engine when he could have seen if if he had looked.  It only required an instant to look up the track before he started over it.  Yet he permitted the engine to approach a distance of 255 yards in full view and run him down. He said that he did look just before he stepped on the track, and a witness testified that he saw him look just after he had passed the end of the box cars and again just before he stepped on the track.  But this could not have been true, for the engine was approaching in full view and deceased would have seen it if he had looked at that time.

The speed of the engine was 35 miles an hour—at least, the jury could have so found; and, computing the time by seconds, it was in full view of deceased about 15 seconds while running the distance of 255 yards after it came out of the cut. It is insisted that we should not say as a matter of law that it constituted negligence to fail to look up the track during so short a time.  Why not?  Under the peculiar circumstances of this case, there was nothing to engage his attention in any other direction, and it only required an instant to look up the track before going on it.  Deceased was familiar with the surroundings there, and could see the distance to the cut, and should have taken some pains to look within such period of time as would make this precaution available for his own safety.

The case of *Choctaw, O & G. Rd. Co.* v. *Baskins,* 78 Ark. 355, is pressed upon us as one of controlling similarity on the facts, but the facts of that case were entirely different.  There the traveler's attention was, or might have been, diverted in another direction, and there were circumstances which might reasonably have led him to believe that the train would not move.  That made a question for the jury to decide whether or not he was guilty of negligence in failing to look in a certain direction for a space of about half a minute.  Here, as we have already said, there was nothing to engage the attention of the traveler in any other direction, for there was no danger to be apprehended in the other direction.

It is earnestly insisted by learned counsel for plaintiff that the attention of the deceased was, or might have been, engaged in looking down the track for an approaching train. The court gave an instruction on that subject at the request of the plaintiff, but we do not think the testimony justified the submission of that question to the jury. Deceased was traveling in a southeasterly direction, and could, without effort, see down the track, which was straight and unobstructed for at least three-fourths of a mile. He had but to look down the track when he first came in view to see that no danger was to be apprehended in that direction. His absolute safety from danger in that direction gave him an opportunity to center his precaution against danger to be apprehended from the other direction up the track, and the circumstances of the case leave no room to say that his attention was diverted by the necessity of looking down the track for an approaching train.

We are therefore of the opinion that deceased was, according to the undisputed testimony, guilty of contributory negligence, which bars a recovery for damages. The case has been fully developed on the part of the plaintiff, and no useful purpose can be served by remanding it for a new trial. So the judgment is reversed and the cause dismissed.

KIRBY, J., dissents.

PER CURIAM. On rehearing the judgment of this court was modified so as to remand the case for a new trial, counsel for plaintiff showing that they had reason to believe that they could adduce testimony tending to prove that the trainmen discovered the perilous position of deceased in time to have avoided the injury and failed to exercise ordinary care thereafter to avoid the injury.