CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* BATSEL.

Opinion delivered October 23, 1911.

1.  RAILROADS—DUTY TO PERSON AT CROSSING.—One who was at a public crossing was not a trespasser, although he had previously been walking

between the railway tracks, and at such place it was the duty of the railway company to exercise ordinary care in the operation of its train to prevent injury to him as a traveller.   (Page 532.)

2.  SAME—CONTRIBUTORY NEGLIGENCE.—Where the undisputed evidence shows that a person injured at a public crossing had an opportunity to see or hear the approaching train before the time of the injury in time to avoid same, he will be deemed to have seen or heard the train, although he testifies that he neither saw nor heard the train. (Page 533.)

3.  SAME—CONTRIBUTORY NEGLIGENCE.—Where a traveller was injured at a public crossing at night or when it was so dark that he could not have seen the approaching train, it can not be inferred either that he saw the train or was negligent in failing to look.   (Page 536.)

4.  SAME—CONTRIBUTORY NEGLIGENCE FOR JURY WHEN.—Where, in case of injury to a traveller at a crossing, it was a question whether plaintiff looked and listened for the train's approach or whether darkness obscured the sight of the train, it was a question for the jury whether plaintiff was guilty of contributory negligence.   (Page 534.)

5.  INSTRUCTION—REFUSAL TO GIVE—WHEN HARMLESS.—It was not error to refuse to give an instruction upon an issue in the complaint which was abandoned at the trial.   (Page 535.)

6.  EVIDENCE—SIZE OF PLAINTIFF'S FAMILY.—In an action for personal injuries evidence as to the size of plaintiff's family and as to the ages of the members thereof is incompetent and prejudicial as calculated to arouse the sympathies of the jury.   (Page 535.)

7.  APPEAL AND ERROR—EXCESSIVE DAMAGES—WHEN REMITTITUR ALLOWED.—Where, in a personal injury suit, incompetent testimony was introduced whose sole effect was to enhance the amount of the damages allowed, the prejudice arising therefrom may be cured by directing a remittitur down to a sum so low that there can be no reasonable ground to believe that a jury of average judgment, after considering the evidence, and being properly instructed, would allow a smaller amount. (Page 535.)

Appeal from Monroe Circuit Court; *Eugene Lankford,* Judge; affirmed on remittitur.

*Thos. S. Busbee* and *George B. Pugh,* for appellant.

1. Appellee was on foot and without impediment, in age he was in the prime of life, and in full possession of all his faculties.   It was after sunset, but light enough to distinguish a man two or three blocks away and to recognize one a block away.   The track was straight for miles in the direction from which the train came, almost perfectly level for a thousand feet, and there was no obstruction of any kind intervening to obstruct the view.   Under these circumstances, to accept

appellee's statement that he stopped and looked and listened when he first came upon the track, and again when he reached New Orleans Avenue, and again when he reached the middle of the street and started to step upon the track to cross over to the south side and continued to look and listen while he walked diagonally across the track, and failed to see or hear the approaching train, is to believe the impossible. It is in direct contradiction of all the physical facts, besides being contradicted by the fact that all other witnesses who testified did see the train approaching. 79 Ark. 608, 624; 61 Ark. 549; 97 Ark. 438.

2. Appellee was a trespasser. Mere acquiescence or failure of a railroad company to object can never give people the right to walk up and down the railroad tracks and convert them into a highway for pedestrians, unless there is an invitation from the company that they may be so used. 90 Ark. 278; 83 Ark. 300. The fact that at the time he was injured he had reached a public crossing does not change his relationship to the company. Since he was using the place provided for a crossing by walking laterally with the tracks, he was still a trespasser. 49 Ark. 257; 46 Ark. 513; 82 Ark. 276; 83 Ark. 300; 93 Ark. 24.

3. The court admitted incompetent evidence in permitting appellee to testify to the fact of his being married and to the number of his children. This testimony was prejudical in that its only effect was to arouse the sympathy and enhance the amount of damages. 74 Ark. 326.

4. The verdict is so excessive as to merit a reversal, or at least an order of remittitur down to a reasonable sum. 89 Ark. 522.

*Manning & Emerson*, for appellee.

1. On the question of the legal sufficiency of the evidence to support the verdict, it is first to be remembered that under that portion of the evidence which is undisputed negligence on the part of appellant and a *prima facie* case in favor of appellee are established, placing the burden of proof on appellant. Kirby's Dig., § 6773; 73 Ark. 548-553 and cases cited; Kirby's Dig., § § 6607, 6595; acts 1907, p. 1019 § 1.

The strongest probative force will be given to the evidence in support of the verdict. It will be considered in the light

most favorable to appellee, and all disputed questions of fact will be considered as settled in his favor by the verdict.  129 N. W. 468-9; 97 Ark. 438; 135 S. W. 338, 339.  The question also as to whether or not appellee both looked and listened before going upon the track and neither saw nor heard the train, is settled in his favor by the verdict.

On account of the long continued and almost constant use of the track just west of the street crossing and on the crossing itself, by the public, of which use appellant was fully aware, appellant was under the duty to exercise every precaution to pevent injuring persons upon its track, and especially persons upon the street crossing where appellee was when injured.  89 Ark. 103-107; 87 N. E. 40-42; 133 S. W. 789; 73 Ark. 413; 88 Ark. 524, 531.

The jury might well give credence to appellee's testimony that he had looked and listened and failed to see or hear the train from the facts in proof that it was "pretty dark," "real dark" and "probably partly cloudy;" that there were lights in the coaches; that the headlight on the engine had been lighted and permitted to go out, and that lights were burning in the hotel; also, that about a quarter of a mile from the place of injury there was a low place in the track where a train could not be seen after dark unless the headlight was burning. 137 S. W. 568-573; 92 N. E. 241; 87 Ark. 628, 631, 85 Ark. 326-333; 79 Ark. 138-141; 126 S. W. 850-853; 68 N. W. 599; 98 Ark. 422.  See also 74 Ark. 372;

If the physical facts were as contended for by appellant, then its servants in charge of the train could have seen appellee in time to have prevented injuring him, and the jury might have so found   If so, their finding could not be disturbed on appeal.   91 Ark. 14-19; 89 Ark. 496; 104 S. W. 533.

2.  Appellee was not a trespasser.  Where the use of a railroad track by the public as a highway has been so general, long continued and oft repeated that the company must have known of it and acquiesced therein, such use by the party injured would be permissive and constitute him a licensee instead of a trespasser.   89 Ark. 103-107; 85 Ark. 326.   In this case, appellant being no trespasser at any time on appellant's property, it owed him the same duty when he first crossed the track as it did when he crossed at the street crossing.   128

S. W. 841. What his relationship was towards appellant when he first crossed the track, and when he was walking between the two tracks is not material. He was injured while on the public street crossing, and he could not have been a trespasser there. 33 Cyc. 756; Id. 757; Id. 932; 88 Minn. 325, 92 N. W. 1115; 105 La. 418; 29 So. 952; 126 S. W. (Ark.) 850, 852.

3. There was no erroneous or prejudicial testimony admitted; but if the testimony as to being married and having a number of children was immaterial and therefore inadmissible, it was harmless and not prejudical, for the reason that the evidence shows that appellee sustained greater actual damages than the jury allowed him, not to mention his pain and suffering. 74 Ark. 326; 31 W. Va. 842, 8 S. E. 512; 67 Mich. 61, 34 N. W. 659.

4. The verdict was not excessive. 89 Ark. 522; St. L., I. M. & S. Ry. Co. v. Webster. 99 Ark. 265; St. L., I. M. & S. Ry. Co. v. Brown, 100 Ark. 107; 93 Ark. 183; 87 Ark. 443; 117 N. Y. S. 233; 117 S. W. 1043; 52 Wash. 289; 100 Pac. 838; 115 S. W. 302; 120 S. W. 958; 111 S. W. 761; 125 S. W. 720; 129 N. W. 124; 111 Pac. 632; 112 Pac. 235; 185 Fed. 624; 126 S. W. 657; 104 Pac. 126; Id. 225.

FRAUENTHAL, J. This was an action instituted by the plaintiff below to recover damages for personal injuries which he sustained by being struck and run over by one of defendant's trains at a public crossing in the city of Brinkley. The jury returned a verdict in his favor and assessed his damages at $17,000. From the judgment entered upon that verdict, the defendant has prosecuted this appeal. In its motion for a new trial it sets forth a number of grounds why the judgment should be reversed, but on this appeal it only presses the following: (1) because there is not sufficient evidence to warrant a recovery in favor of the plaintiff; (2) because the court erred in certain rulings made by it relative to the instructions; (3) because the court erred in permitting the introduction of certain incompetent testimony; (4) because the verdict is excessive.

The plaintiff was struck by one of defendant's trains while he was crossing the railroad track in a public street in the city of Brinkley known as New Orleans Avenue. The

defendant contends that the evidence is not sufficient to justify a recovery in favor of plaintiff because (1) he was a trespasser upon its property, and there is no proof that the defendant or its employees could have avoided the injury after discovery of his perilous situation on or near the track, and (2) because the plaintiff was guilty of negligence contributing to the cause of the injury.

The plaintiff was a carpenter and millwright, and had gone to Brinkley a few months prior to the time he sustained this injury, and was engaged in rebuilding a mill that had been destroyed by a cyclone which visited that city about that time. With his family he was living in a tent upon a vacant block in the center of the business section of the city. This block adjoined New Orleans Avenue on its west, and defendant's railroad ran across it from west to east. The depot was located just east of this avenue, and some of the principal business houses of the city, including hotels and the post-office, were situated near this vacant block. The testimony tended to prove that the public for a long time prior to the injury had been using the space between the double tracks along this vacant block for the purpose of walking to and from these various business places. A beaten path lay across the block to the railroad track, and the public continuously used this and the space between the tracks as a foot path in going to and from the depot, hotels and postoffice. On May 26, 1909, plaintiff left his tent on the vacant block to go to the mill where he was working, which was located east of the depot. He proceeded along the pathway to the railroad track, and then for a distance of 75 or 80 feet between the tracks to New Orleans Avenue. This street is about 80 feet wide, and runs north and south across the railroad tracks. The plaintiff proceeded in this street for probably 50 or 75 feet, and then turned south, and crossed the defendant's track in order to get to a platform on the south side thereof. He had just got over the track, and was on the ties on the outer side thereof and in the act of stepping to the platform when the pilot of a passenger train coming from the west struck him in the back, knocking him down and dragging him along for a short distance. His left arm was crushed to such an extent that amputation was necessary, and he was severely injured in the back and head.

The injury occurred about sunset, and there was a sharp conflict in the testimony as to the exact hour and also as to the degree of darkness or of light at that time. Some of the witnesses on behalf of the defendant testified that it was light, and a train on the track could have been readily seen for the distance of a mile or more. One of the witnesses on behalf of plaintiff testified that it was "pretty dark;" another said that it was "nearer dark than daylight;" another stated that it was "dusk-dark;" the plaintiff said it was "real dark or getting real dark." The testimony on the part of the plaintiff tended further to prove that there was no headlight upon the engine of this train, that no bell was rung or whistle sounded as it approached this crossing, and that the train was going at a rate of speed of from 12 to 15 miles per hour and in excess of the speed allowed by an ordinance of the city. The plaintiff testified that, when he first reached the railroad track after leaving his tent, he stopped, and thereupon looked up and down the track, and listened for a train, and, neither seeing nor hearing a train running on the track, he proceeded between the tracks until he got to New Orleans Avenue, where he again looked and listened for any approaching train. He then proceeded into the street until he got near the east side thereof, when he turned in a southerly direction to the railroad track in order to cross it, and that before going upon the track he again looked up and down the track, and, neither seeing nor hearing an approaching train, he proceeded to cross the track. At this time there was an engine, from which the steam was escaping, standing on a sidetrack near by, and the consequent noise therefrom was probably sufficient to prevent the hearing of any approaching train. Just as the plaintiff had crossed the track and was on the outside ties, some one cried out, and, as he turned, the train struck him.

We do not think it necessary to pass upon the question as to whether or not the public was using the railroad right-of-way along the vacant block as a highway by implied invitation or permission of defendant, or whether the use thereof by the the public and the plaintiff as a footpath was so general, long continued and oft repeated that the defendant must have known it and acquiesced in it and thus have constituted the plaintiff, while in the use thereof, a licensee and not a trespasser.

*Missouri & N. Ark. Ry. Co.* v. *Bratton,* 85 Ark. 326; *Moody* v. *St. Louis, I. M. & S. Ry. Co.,* 89 Ark. 103. The injury did not occur upon the railroad right-of-way in this vacant block, but it occurred at the public crossing in a public street. The fact that prior to that time the plaintiff had been walking on the roadbed between the tracks along the vacant block, whether he was then a trespasser or not, could not affect his rights at the time when he was actually on the public crossing. When he was in the street at this public crossing, he then became a traveller in a public highway at the crossing of defendant's track, and he had then the right to use such crossing equally with the defendant. At that place and time he was not a trespasser upon defendant's right-of-way. At such place it was the duty of defendant to exercise ordinary care in the operation of its trains to prevent any injury to him as a traveller. *St. Louis & S. F. Rd. Co.* v. *Carr,* 94 Ark. 246. The principles of law that are applicable to a case like the one at bar, where the traveller has been injured by a train at a public crossing, have been repeatedly announced by this court. It has been held that it will constitute negligence for one who approaches a railroad crossing to fail to look in both directions and listen for the approach of trains, and that it is only in exceptional cases that it is proper to submit to the jury the question as to whether the failure to exercise that precaution is excusable. The traveller must not only look and listen for the approach of trains before he goes upon the track, but he must continue to do this until he has passed the point of danger. *Railway Co.* v. *Cullen,* 54 Ark. 431; *Little Rock & Fort S. Ry. Co.* v. *Blewett,* 65 Ark. 235; *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 135. Where the undisputed evidence shows that the injured person, by looking or listening, had an opportunity to see and hear the approaching train before the time of the accident, and that his opportunity was such that he could not have failed to have seen or heard the train in time to have avoided the injury if he used ordinary care in looking and listening, then, under the law, he will be deemed to have seen and heard the train, although he should testify that he looked and listened and did not either hear or see the train. Under such circumstances, the traveller "is deemed to have seen or heard what is plainly to be seen or heard." *Martin* v. *Little Rock*

& F. S. Ry. Co., 62 Ark. 156; St. Louis, I. M. & S. Ry. Co. v Dillard, 78 Ark. 520. Such a doctrine was applied in cases where it was broad daylight, and the engine or train in plain view, and could unquestionably have been seen if the traveller had looked in the direction whence it came. St. Louis, I. M. & S. Ry. Co. v. Coleman, 97 Ark. 438. But if it was night, or so dark and the light so uncertain that it was possible that, although the traveller looked, he could not have seen the approaching train, then it can not be said that it is conclusively shown by the physical facts that the traveller did not look when he testified that he did do so. If it was too dark to see the train, then it can not be conclusively inferred that the traveller failed to look, or that if he did he saw the train. St. Louis, I. M. & S. Ry. Co. v. Johnson 74 Ark. 372; Ark. Central Rd. Co. v. Williams, 97 Ark. 438. Under such circumstances, the question is still one of fact, and it is left in doubt as to whether or not the party did look and listen for the approach of the train, and whether darkness did obscure the sight of the train. In the case at bar, there was some evidence adduced upon the trial proving that it was too dark to see the train without a headlight, and also that the escaping steam from the nearby engine on the side track prevented hearing the approaching train. According to the testimony on the part of the plaintiff, the approaching train was without headlight, and no warning signal was given by whistle or bell of its approach. Under these circumstances, it became a question of fact for the jury to determine whether or not the plaintiff did exercise the required care of looking and listening for the train before attempting to cross the track.

Counsel for defendant urge that the court erred in refusing, at its request, to instruct the jury that there was "no testimony that any of defendant's employees in charge of the train which struck him saw him before he was struck;" and that plaintiff "can not recover on the theory that the defendant's employees injured him after discovering his peril." In the complaint it was alleged that one of the acts of negligence on the part of defendant was the failure to exercise ordinary care after the perilous situation of plaintiff upon the track was discovered, but during the trial of the case a recovery upon this alleged act of negligence was abandoned. No testimony was adduced to

support, and no instruction was given to base a recovery upon, such a theory. Such an act of negligence was not made an issue upon the trial of the case. The defendant was, therefore, not prejudiced by the refusal to give an instruction upon a matter that was not actually in issue. Other complaints are made relative to the ruling made by the court upon instructions given and refused. We have examined each of these and fail to find any error which was prejudicial. The instructions refused were fully covered by others given, and the objection to those which were given, we think, relate rather to their verbiage, which would, in all probability, have been corrected if the attention of the lower court had been directed to them by specific objection, which was not made. We do not think it would serve any useful purpose to note these objections in detail.

It is earnestly contended by counsel for the defendant that the court erred in permitting the plaintiff to testify that he was a married man, and that there were nine members of his family, consisting, besides himself and wife, of five girls and two boys, and that the boys were only five and eight years old respectively. Objection was duly made to the introduction of this testimony, and, upon objection thereto being overruled, exceptions were duly noted of record. In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Adams,* 74 Ark. 326, it was held (quoting syllabus): "In an action for personal injuries, evidence as to the size of plaintiff's family is incompetent, as it does not tend to show his earning capacity but rather the amount of expenses; and it is prejudicial as calculated to arouse the sympathies of the jury." In that case it was originally decided that the judgment should be reversed upon the sole ground of the prejudicial error committed by permitting the introduction of such testimony. Subsequently, a remittitur was allowed to be entered upon the motion of the plaintiff. As held in that case and also in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Brown, ante,* p. 107, such remittitur was permitted upon the principle that where the incompetent testimony was of a nature the sole effect of which was to enhance the amount of the damages allowed, the prejudice arising therefrom could be cured by reducing the amount of the damages. In order to eradicate any prejudical effect that may result from an error the sole effect of which increases the

amount of the damages and thus to make them excessive, the rule laid down by this court is that it will "name an amount so low that there can be no reasonable ground to believe that a jury of average judgment, after considering the evidence, would, when properly instructed as to the law, allow plaintiff a less sum than that named and which amount the court can clearly see is not excessive." The testimony in the case at bar tended to prove that the plaintiff was 41 years old and earning about $1,200 per year; he was struck in the back, causing a rupture; he was painfully injured about the head and his left arm was crushed to such an extent that its amputation was necessary; he was left in a physical condition where he could earn very little money (about $300 per year); he was confined to his bed for at least six weeks and suffered great pain during that time and has suffered great pain since. The sole effect of the introduction of the above incompetent testimony was, we think, to enhance the amount of the damages and thus to make the amount of the damages returned excessive. By fixing the amount of the damages at a sum which, after considering all the competent testimony, we think a jury would have been bound to have allowed, any prejudice resulting from the introduction of such incompetent testimony would be removed. Requiring the plaintiff, therefore, to enter a remittitur reducing the amount of the judgment to such an amount would strip the verdict of any prejudicial effect that could have arisen on account of the error from the introduction of this incompetent testimony. Taking into consideration the character of the injury and its effect upon the plaintiff, of pain, loss of arm and incapacity to labor, we are of the opinion that to name the amount of the damages at seven thousand dollars would strip the verdict of any prejudicial effect that could possibly have arisen from the introduction of this incompetent testimony, and that this amount will be so low that there can be no reasonable grounds to believe that a jury, after considering only the competent evidence which was adduced upon the trial, would have allowed plaintiff a less amount. The plaintiff will be given the privilege to accept this sum, if he is so advised, and if, within 15 days, he will enter a remittitur down to the sum of seven thousand dollars, the judgment for that sum

will be affirmed. Otherwise the judgment will be reversed, and this cause will be remanded for a new trial.

WOOD and HART, JJ., concurring:

Our views on the practice of allowing a remittitur in cases of this kind are expressed in a dissenting opinion in the recent case of *St. Louis, I. M. & S. Ry. Co.* v. *Brown.* We concur only on the ground that the latter case is now the rule of this court.