## CHICAGO, M. & ST. P. RY. CO. v. TALBOT.

### (Circuit Court of Appeals, Ninth Circuit.   July 14, 1924.)

### No. 4184.

**1. Railroads ☞348(2)—Evidence held to sustain finding deceased was not trespasser.**

Evidence *held* to require submission to the jury of the question whether plaintiff's intestate, when killed, was on a highway or on the private right of way of defendant railroad company, and to sustain their finding that he was on the highway.

**2. Railroads ☞301—Person killed on highway crossing not a trespasser.**

A person struck and killed while on a highway crossing a railroad track was not a trespasser, though prior to that time he had been on the private right of way.

In Error to the District Court of the United States for the Northern Division of the Eastern District of Washington; J. Stanley Webster, Judge.

Action at law by Margaret M. Talbot, administratrix of the estate of Matthew Mahaney, deceased, against the Chicago, Milwaukee & St. Paul Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

George W. Korte, of Seattle, Wash. (Parker W. Kimball, of Spokane, Wash., of counsel), for plaintiff in error.

Graves, Kizer & Graves, of Spokane, Wash., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge.   From a judgment against the railroad company in an action brought by Margaret M. Talbot, as administratrix, to recover damages for the death of her father, Matthew Mahaney, the defendant below brought writ of error. On a Sunday morning Mahaney was killed at Milltown, Idaho, through which the defendant's main line runs north and south. An east and west highway crosses the track, and at the southeasterly corner of the intersection there is a store and warehouse; the store abutting the highway, and the warehouse adjoining the store on the south. South of the warehouse a spur track leaves the main line by switch, and runs alongside the warehouse; the terminus of the spur being a few feet south of the store and highway. At the end of the spur track there were logs to keep cars from running off the track. At the time of the accident a box car was standing on the spur in front of the warehouse. A passenger train, running about 25 miles per hour on the main line, approached the town from the south. The first four cars of the train passed over the spur switch, but the rear trucks of the fifth car, followed by other cars of the train, swung onto the spur track, drove the box car in front of them, tore up the rails, demolished the corner of the store, roof, and platform, dashed across the highway, and was stopped by rock on the north side of the highway. Under the wreckage the body of Mahaney was found.

The principal question before the jury was whether Mahaney, when struck, was upon the highway near the point of its intersection with the railroad track, or, as defendant contended, was on the right of way of the defendant. Stated in a very brief way, the evidence of plaintiff was to the effect that, just before Mahaney left home, he told his wife he was going down to see one Alexander, and that they were going to St. Maries together. Alexander, who was greasing a wagon on the west side of the main track, some 40 or 50 yards from the crossing, heard a crash, went up to the wreckage, and then walked back to the switch, which was thrown over so that the train could take the side track. He then walked back to the wreck and saw Mahaney's hat lying "right on the crossing, * * * on the road," and Mahaney's body lying "right on the crossing in the road, on the side of the track, on his back." Witnesses said the body was lying on the back, practically covered by débris, beneath the springs of the box car. The top of the head was torn off; both legs were broken, though the body itself was not crushed, but badly bruised. There were no blood stains in the snow, except where the body was found. Mahaney's hat was found uninjured in the roadway near the body.

[1] The railroad company did not contest its responsibility for the defective condition of the switch, which caused the cars to leave the main track and to run upon the spur, but contended that the evidence led to the clear conclusion that Mahaney, while trespassing upon the private right of way of the company, was caught between the extension platform and the box car near the spur, and was dragged to where his body was found, and that therefore no liability attached. Among the witnesses introduced in support of the defense was McLaughlin, one of the last persons who saw Mahaney before the accident occurred. Witness was walking along the platform running from the store to the warehouse, and testified that he saw Mahaney coming toward him, walking parallel at first with the main track; that Mahaney was then just behind the crosswise logs at the end of the spur; that he called to Mahaney to get off the track as the train was coming; that Mahaney answered with some jocose remark; that he himself went immediately into the warehouse, and just got inside when he heard something hit the building; that he was knocked down, and when he got up "the thing was all over." In rebuttal there was testimony tending to show that, when McLaughlin and Mahaney were talking, Mahaney was in the roadway at a point which was considerably nearer the highway than the point at which McLaughlin's evidence placed him.

There was a general verdict for plaintiff administratrix, and the jury answered affirmatively a special interrogatory asking whether Mahaney was struck and killed in the highway which intersects the railroad track at Milltown. No answer was given to an interrogatory asking whether, if it was found that Mahaney was killed in the right of way, he was a trespasser as defined in the instructions. Enough evidence has been stated to make it clear that the case was properly for the jury. In reaching their conclusion they might have reasoned that, if Mahaney were on the right of way behind the box car at the instant he was struck, and was dragged to the spot in the highway

where his body was found, his clothing would have been torn from his body and the trunk of the body would have been badly mangled, or they might reasonably have concluded that, if the body had been dragged from the right of way over the snow which was on the ground, there would have been some mute evidence, such as blood or bits of clothing, in the path of the wreckage. Great weight may also have been attached to the hat itself and the condition of it—clean and not in the least marred—picked up in the highway near the body. It is very reasonable to say that, if Mahaney had been struck while within the right of way, his hat would either have fallen at the point where he was hit, and would have been found there or thereabouts, or that, if his body had been dragged from the right of way to the highway, yet his hat remained on his head until the cars stopped, the hat would have been torn or bloody or both.

[2] Further discussion of the facts is unnecessary, and we must accept it as determined that Mahaney was struck and killed in the highway. It follows, therefore, that the contentions by plaintiff in error that the court erred in rulings upon evidence respecting the use of the railroad tracks as a pathway, and in giving and refusing instructions bearing upon the risks incurred by one who uses a railroad track, if objection is made by the railroad company, are removed from the case, and legal rules that would apply if Mahaney had been struck within the right of way do not require consideration. The court correctly charged that, if the jury found that Mahaney was struck and killed in the highway, he was not a trespasser. This was correct, even though prior to the time he was struck he had been within the right of way. Chicago, R. I. & P. Co. v. Batsel, 100 Ark. 526, 140 S. W. 726; Bowles v. C. & O. R. Co., 61 W. Va 272, 57 S. E. 131. If in the use of the highway Mahaney was free from contributory negligence, as was fully explained by the court in its instructions, plaintiff could recover, provided the railroad company's negligence was the proximate cause of death. The circumstances adduced in evidence required the court to submit to the jury the determination of what was the proximate cause of death. Munsey v. Webb, 231 U. S. 150, 34 Sup. Ct. 44, 58 L. Ed. 162.

After careful consideration of all points urged for reversal, no prejudicial error appears; hence the judgment must be affirmed.

Affirmed.