CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY *v.* LUSBY.

Opinion delivered February 3, 1930.

1044

1046

*Thos. S. Buzbee, H. T. Harrison* and *Geo. B. Pugh,* for appellant.

*Hays, Priddy, Rorex & Madole,* for appellee.

KIRBY, J., (after stating the facts). The undisputed testimony discloses that the decedent was a trespasser upon the railroad company's track at the time and place where he was killed by the passing train, but the refusal of the court to tell the jury that he was a trespasser in requested instruction No. 3 was not prejudicial, if erroneous, since the case was tried throughout, and the instructions all given on the theory that the deceased was a trespasser and entitled only to consideration as such.

If the engineer's testimony had been believed by the jury or could be regarded as undisputed, appellant would have been entitled to a directed verdict. The engineer stated that he saw the decedent sitting on the

tie or rail of the track in the range of his headlight distant, that he immediately blew the warning blasts with the whistle, and that decedent turned and saw the train coming, and got up as if to get away from the track, which he expected him to do, and that his feet suddenly seemed to slip out from under him letting him fall back on the track. Nothing possible could have been done to prevent the injury thereafter. It was impossible to stop the train before it was stopped, two coach lengths beyond where he was struck. This testimony however, was not undisputed since six witnesses who lived or were in the vicinity of the station all of whom testified that they could have heard the signals, if any were given, saw the train coming in, watched its approach, and none of them heard any signals given until after the train stopped suddenly when the blasts of the whistle were made calling out the brakeman. No error was committed in refusing to direct a verdict.

The court discussing the liability of railroad companies for damages for injuries to persons trespassing upon the tracks and failing to keep a lookout under Act 284 of 1911, said in *Railroad* v. *Gibson,* 107 Ark. 431: "We think the construction there placed upon the act applies to persons alike, and that the railroad company now owes the same duty to keep a lookout to avoid injuring the trespasser upon its tracks, and that upon proof of injury to such person by the operation of its trains under such circumstances as to raise a reasonable inference that the danger might have been discovered, and the injury avoided if a lookout had been kept, that a *prima facie* case is made, and the burden of proof then devolves upon the railroad company to show that a proper lookout was kept as required by the statute, and that it used ordinary care to prevent the injury to the person after his discovery in a perilous position in order to escape liability for such injury." The engineer testified that a lookout was kept, and the perilous position of the decedent upon the track or ties was discovered as soon

as could have been done in the night with the headlight of the train, that he gave the warning and the trespasser looked toward the oncoming train, got up as if to get away from the track, and that suddenly his feet seemed to slip from under him, and he fell back upon the track, and it was thereafter impossible to stop the train or prevent the injury. A *prima facie* case of liability was made by the proof herein to go to the jury, and the case is different from the cases relied upon (*St. L. I. M. & S. R. Co.* v. *Coleman*, 97 Ark. 438, 135 S. W. 338; *Kelley* v. *DeQueen & E. R. Co.*, 174 Ark. 1000, 298 S. W. 347), and appellant was not entitled to a directed verdict as already said.

On the question of the excessiveness of the verdict the testimony is rather meager as to the disposition and ability of the deceased to continue to contribute to the support of his father, but it was shown that he had been contributing about one-half of his earnings to his father since his coming of age, and that he stated frequently that his father should not worry about the future, as he would take care of him when he could no longer work. The expectancy of the father and the decedent, his son, was shown, and the majority has concluded that the amount of damages, $2,000, awarded the father as the next of kin for pecuniary loss on account of the negligent killing of his son, is not excessive.

The judgment is accordingly affirmed.