St. Louis & San Francisco Railway Company *v.* Stewart.

Opinion delivered December 23, 1918.

1.  Appeal and error—review—verdict.—The Supreme Court will uphold a verdict if there is any substantial evidence to support it.

2.  Appeal and error—review—verdict.—Where the facts are undisputed, and by applying to them the well-known laws of nature or the physical facts, it is demonstrated beyond controversy that the verdict is based upon what is untrue, the Supreme Court will declare as matter of law that the testimony is legally insufficient.

3.  Railroads—negligence—evidence.—Where there was a controversy among the witnesses as to whether defendant's headlight was burning when defendant's train ran into plaintiff's automobile at a crossing, and whether plaintiffs could have seen the approaching train, *held* a question for the jury whether the headlight was burning and whether plaintiffs were guilty of contributory negligence.

4.  Railroads—duty of traveler at crossing.—A traveler at a railroad crossing must exercise the care of a man of ordinary prudence under similar circumstances, and, if need be, must stop

as well as look and listen; any duty to stop depending on whether danger could be thereby better ascertained.

5.  RAILROADS—INJURIES AT CROSSING—QUESTION FOR JURY.—In an action against a railroad company for injuries to plaintiff and his automobile received at a crossing in the night time, the question of the railroad's negligence *held* for jury.

Appeal from Crittenden Circuit Court; *R. H. Dudley*, Judge; affirmed.

### STATEMENT OF FACTS.

R. M. Stewart while riding in his automobile across a public railroad crossing in the town of Turrell, was struck by a south-bound passenger train of the St. Louis-San Francisco Railway Company and severely injured and his automobile badly damaged. He sued the railway company to recover damages. The material facts are as follows:

On the 6th day of December, 1917, R. M. Stewart, superintendent of an oil mill at Marianna, Arkansas, and N. B. Rice, night superintendent of an oil mill at Forrest City, Arkansas, left Memphis, Tennessee, in an automobile about six o'clock p. m. for Tyronza, Arkansas. Stewart was the owner of the automobile and drove it. They got to Turrell, Arkansas, about seven-thirty o'clock. It was then quite dark. The railroad track at Turrell runs in a northerly and southerly direction and the public road is east of the track. The accident occurred at a public road crossing two or three hundred yards north of the station at Turrell. There is a slight curve in the railroad track after the station is passed. When they reached Barton Avenue they turned into it and crossed the railroad track. They practically stopped when they turned into Barton Avenue to go across the public crossing and looked both ways and listened for the approach of a train. It was dark and they heard no sound of bell or whistle to indicate the approach of the train. They did not see any light or hear the approach of the train. It is something like thirty or forty feet from where they turned into Barton Avenue to cross the railroad tracks to the edge of the rails. There is a five or six feet incline at the crossing

and they went up that incline very slowly, looking both ways for the light of an approaching train and listening for it, or for the signals warning them of its approach. The automobile went up the incline at not over three or four miles an hour and just as they turned the automobile into Barton Avenue, they practically stopped. That is, the speed of the automobile did not exceed one mile an hour. Just as the front wheels passed over the first rail, there was one short blast of the whistle and the cow catcher ran into the wheels of the automobile and there was another blast of the whistle. The train knocked the automobile twelve or fifteen feet down the track and tore the front wheels off it and otherwise injured it. Stewart was also severely injured in the accident. The above is the version of the accident testified to by R. M. Stewart. His testimony was in all essential respects corroborated by that of his companion, N. B. Rice. Rice, however, gave the rate at which the automobile was running a little faster than Stewart. Both of them testified, however, that the headlight on the engine was not burning and that they could not see any lights in the coach windows, although they were looking for the approach of a train as they neared the crossing. They also stated that the train came coasting in without making any noise and they did not hear its approach; that no warning of its approach to the public crossing by sounding the whistle or ringing the bell was given.

Two other witnesses for the plaintiff testified that they saw the train in question just before the accident that night, and that the headlight on the engine was not burning and that no warning of the approach of the crossing was given either by sounding the whistle or ringing the bell.

On the other hand several witnesses for the defendant testified that the statutory signals for the crossing were given and were heard by them, although they did not see the train. A passenger on the train testified that the lights were burning in the coaches just as usual. The conductor, also, testified to this fact and stated further

that the curtains to the windows were up.    Several persons in Turrell testified that they saw the approach of the train and that the headlight was burning as usual.    One witness stated that it had a headlight, but that it was burning very dimly.    The engineer and fireman both testified that they did not see the automobile until it was too late to stop the train before striking it.    They testified that they did all in their power to stop the train as soon as they saw the automobile and blew two short blasts of the whistle to warn plaintiff of the nearness of the train.

It was shown by the plaintiff that his automobile was an eight cylinder Peerless which he had owned a couple of months and which cost him $2,379.26.    It cost plaintiff $986.61 to have his automobile put in as good condition as it was before the accident.

The jury returned a verdict for the plaintiff for $500 damages to himself and $986.61 damages to his automobile.    From the judgment rendered, the defendant has appealed.

*W. F. Evans* and *W. J. Orr,* for appellant; *Berry & Wheeler,* of counsel.

The case should not have been submitted to the jury. A verdict for appellant should have been directed under the undisputed evidence and physical facts showing appellee's contributory negligence.

Before going on the track appellee should have looked and listened and if necessary stopped his car.    54 Ark. 431, 16 S. W. 161; 65 Ark. 235, 45 S. W. 548; 69 Ark. 135, 62 S. W. 64; 76 Ark. 225, 88 S. W. 911; 78 Ark. 355, 93 S. W. 757.    The duty to stop, look and listen must be performed at such a time and place with reference to the situation involved as will enable the traveler to accomplish the purpose the law had in view in imposing the duty upon him.    117 Ark. 464.    When the injured party had such opportunity and he could not have failed to discover his peril had he used due care, then he will be deemed to have seen and heard the train.    99 Ark. 170; 78 Ark. 520; 62 Ark. 156; 33 Cyc. 1117; 73 Cal. 137; 69 Pac. 582; 79

Pac. 999; 53 Pac. 651; 83 Pac. 441; 72 N. E. 1053; 14 N. E. 737; 57 N. W. 661; 33 S. W. 645; 162 Mo. 569; 25 N. Y. S. 1009; 70 N. E. 68; 150 Pa. 386; 58 N. W. 393; 139 Fed. 639; 92 Pac. 687; 174 Pac. 819.

The statutory signals were given, the coaches were properly lighted, the headlight was burning, and appellee should have discovered the train in time to have avoided injury. The injury was the result of appellee's own negligence.

*L. C. Going,* for appellee.

The cause was properly submitted to the jury. Where the evidence is conflicting as to whether a traveler at a public crossing who was injured, looked and listened for an approaching train, and continued to exercise that vigilance, this presents a question for the jury. 101 Ark. 315; 142 S. W. 499; 200 S. W. 1000.

The cases relied on by appellant in 99 Ark. 170, 78 Ark. 520, 94 S. W. 617, and 62 Ark. 158, 34 S. W. 545, do not apply to the facts in this case.

Appellant failed to keep a proper lookout and to give the statutory signals and also violated Section 8132, Kirby's Digest, providing that engines should be equipped with a 1,500 candle power electric light. It is liable under the following cases: 110 Ark. 444, 162 S. W. 51; 166 S. W. 568; 112 Ark. 477; 125 S. W. 120.

Appellee's testimony was not contradicted by the physical facts.

HART, J. (after stating the facts). The only assignment of error relied upon for a reversal of the judgment is that the evidence is not legally sufficient to warrant the verdict. The deficiency in this respect claimed by the counsel for the defendant is, that the testimony of the plaintiff was contrary to the physical facts and that the court should have directed the jury to have returned a verdict for the defendant. Under the settled rules of this court, we must uphold a verdict on appeal if there is any substantial evidence to support it. Where the facts are undisputed and by applying to them

the well-known laws of nature or the physical facts, it is demonstrated beyond controversy that the verdict is based upon what is untrue and cannot be true, this court will declare as a matter of law that the testimony is not legally sufficient to warrant the verdict. *St. L. S. W. Ry. Co.* v. *Britton,* 107 Ark. 158, and *St. L. S. W. Ry. Co.* v. *Ellenwood,* 123 Ark. 428, and cases cited.

In the case at bar it is claimed by counsel for the defendant that the conditions surrounding the plaintiff as testified to by himself and by the defendant's witnesses show that the testimony of the plaintiff and his witnesses is contradicted by the physical facts. In making this contention we think counsel have invaded the province of the jury in deciding what testimony is true and what is untrue. Our statute requires that any railroad company operating a railroad over fifty miles in length shall be required to equip, maintain and use upon each and every locomotive being operated in this State in the night time, a headlight of power and brilliancy of 1,500 candle power. Acts of 1907, p. 1018. Section 6595 of Kirby's Digest also provides that a bell of a certain weight or a steam whistle shall be placed on each locomotive or engine and that the same shall be sounded at a certain distance before approaching a public railroad crossing. These requirements are provided by statute as a means for the protection of the life of the passengers and employees on the train, as well as persons on the track or those approaching the track at a crossing for the purpose of crossing it. It is a matter of common knowledge that no engine is constructed without these equipments being placed upon it. It is also very unusual for a train to be run in the night time without having its headlight lighted. This is a fact known to all reasonable minds by common observation. It is not probable when all the testimony in the case is considered that the defendant was guilty of the culpable continuing negligence of running its passenger trains without a headlight in the night time as testified to by the plaintiff and his witnesses. It is possible, however, for a train to be run without the headlight on the engine

being lighted and whether the headlight was burning at the time of the accident does not contradict any law of nature or the physical facts in the case but depends upon whether or not the plaintiff and his witnesses were telling the truth. The plaintiff and his companion both testified that they were looking in the direction from which the train came and did not see or hear the train approaching. It may be that there was a defect in the machinery which cut off the current from the headlight and prevented it from burning at this time just as was testified to by the engineer of the railway company in *Chicago, Rock Island & Pacific Ry. Co.* v. *Gunn,* 112 Ark. 401. According to the testimony of the witnesses for the defendant, a headlight was burning, but this only created a conflict in the testimony which was settled by the jury in favor of the plaintiff.

It was also shown by witnesses for the defendant that the lights were burning in the coaches as usual and that the window shades were up. This testimony, however, is not uncontradicted. The plaintiff and his companion testified that they looked in that direction for a train and did not see any lights at all or hear any train approaching. It may be that the train was lighted up as usual but that the passenger had pulled down the shades to the windows so that the lights were not discernible by the plaintiff and his companion. The jury might have found this to be the case from the testimony of the plaintiff and his companion to the effect that they did not see any lights although they were looking for a train. The plaintiff and his companion, also, testified that the whistle was not blown for the crossing and that the bell was not kept ringing as required by statute. Again they testified that the train coasted in without making any noise. Their testimony was not contradicted by the physical facts. Their testimony was of facts of a substantive character and related to matters, situations and conditions which might or might not have existed, but which depended wholly upon the truth or falsity of their testimony.

According to the testimony of the plaintiff, the train was running at the rate of twenty-five miles an hour and his automobile was approaching the crossing at the rate of three or four miles an hour when the engine struck it. Taking into account the speed of the engine and of the automobile, the absence of the statutory signals of sound or light, the character of the night and the surrounding conditions, the jury might have found, as it did find, the exercise of reasonable care by the plaintiff in looking and listening for the approach of trains. We are of the opinion that when all the circumstances are considered and the testimony is viewed in the light most favorable to the plaintiff, that the jury was warranted in finding that he had relieved himself from the imputation of contributory negligence.

According to the testimony of the plaintiff himself, he practically stopped the automobile before going, or attempting to go, upon the railroad crossing. Some courts hold that it is the duty of a traveler approaching a railroad crossing to stop and look and listen for the approach of a train before proceeding over. We have not laid down the rule so strictly, but have uniformly held that a person who would pass over a railroad track at a crossing or elsewhere must do all that a man of ordinary care would do under similar circumstances to avoid any probable or possible danger from a passing train, and if need be, stop as well as look and listen. Whether such care requires stopping, as well as looking and listening depends upon whether, without it, the danger to be apprehended could be so well ascertained and averted. *St. L., I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549; *La. & Arkansas Ry. Co.* v. *Ratcliffe,* 88 Ark. 524; *St. L., I. M. & S. Ry. Co.* v. *Prince,* 101 Ark. 315, and cases cited, and *St. L., I. M. & S. Ry. Co.* v. *Kimbrell,* 117 Ark. 457.

It follows from the views we have expressed that the question of the negligence of the defendant and the contributory negligence of the plaintiff were jury questions. No objections are urged for a reversal of the judgment

on account of alleged error of the court in submitting these questions to the jury.

We find no prejudicial error in the record and the judgment will be affirmed.