BALDWIN *v.* WATERS.

4-3968

Opinion delivered October 7, 1935.

*Thos. B. Pryor, Daggett & Daggett* and *John L. Daggett,* for appellants.

*Giles Dearing,* for appellees.

HUMPHREYS, J. This is an appeal from judgments for $1,250 against appellant in favor of Easter Waters and her daughter and for $125 in favor of Sol Meyers, which judgments were rendered in the circuit court of

Cross County, growing out of a collision between appellant's train and a team and wagon which was driven by Emmett Waters, which occurred at a point where a public road crossed the railroad track, known as "Killough Crossing," east of the city limits of Wynne. The railroad track was located on a fill or high embankment running east and west for a considerable distance. The highway ran across the embankment at right angles and over rather steep approaches running north and south from the road level up to and over the railroad embankment. A short freight train owned by appellant, while traveling west on the railroad track on December 29, 1933, ran over Emmett Waters, the husband of Easter Waters and father of Betty Waters, and the team he was driving, killing Emmett Waters and one of the mules, which belonged to Sol Meyers. The wagon was heavily loaded with baled hay, upon which Emmett was seated and driving the team slowly across the track when the collision occurred. He had come up the south approach onto the track, and was struck by the train before the mules could entirely cross the track.

Emmett Waters was a negro sharecrop farmer, about forty-seven years of age when killed, and usually cultivated ten acres of land, raising each year four or five bales of cotton and was a sober, industrious man. He and his wife had been married for seven years and until the last two years of his life had lived continuously together. They had two children. The first child died. The second child, one of the appellees, was nearly three years old when Waters was killed. During the last two years of his life, Waters and his wife were separated, but he frequently visited his wife and child and made small contributions of money to them. He also furnished them with groceries. About a month or so before he was killed, he and his wife had made arrangements to live together again.

Upon the conclusion of the testimony, the court submitted the cause to the jury as to whether appellant was liable in damages upon issues joined as follows: First, for its alleged failure to give the statutory signals; and, second, for its alleged failure to exercise ordinary care

and due diligence after having discovered the perilous position of the deceased to prevent the collision.

It is first contended by appellant that the undisputed evidence showed that the deceased was guilty of contributory negligence, and that for this reason the judgment in favor of Sol Meyers for the loss of his mule must be reversed and his cause dismissed.

According to the testimony of the witnesses introduced by appellees, the deceased was driving a team and wagon loaded heavily with hay from the south up the approach to the railroad track, devoting his entire time and attention to his team. They did not see him look to the east to ascertain whether a train was coming from that direction nor stop and listen for its approach. They said that, while approaching the track, one of his mules stumbled and fell to his knees, and that he was holding a tight line as if to assist the mule in getting up and to hold them to the right side of the road, which was narrow, so as not to run into any one he might meet coming from the north over the dump or embankment. This conduct on the part of deceased tends to show that he was guilty of contributory negligence, and, as the rule of comparative negligence applies to persons only who are injured or killed by the operation of railroads, the judgment for killing his mule must be reversed, and his cause dismissed. *Missouri Pacific Railroad Company* v. *Johnson*, 167 Ark. 464, 268 S. W. 31.

The judgment cannot be affirmed under the doctrine of discovered peril, as appellee's own testimony shows that when Waters and his team were first seen by the servants of appellant, he was twenty or more feet from the track approaching it very slowly up hill in a heavily loaded wagon, and at the time there was nothing to indicate that he would not stop his team before he reached the track. He did drive upon the track in front of the train, but, at the time he did so, the train was too close to him to stop and prevent the injury.

Appellant also contends that the judgment for $1,250 in favor of Easter and Betty Waters must be reversed because the evidence is insufficient to show that it failed to give the statutory signals required to be given as it

approached said public crossing. It is argued that the required signals were given. The statute requiring signals to be given is as follows:

"A bell of at least thirty pounds weight, or a steam whistle, shall be placed on each locomotive or engine and shall be rung or whistled at the distance of at least eighty rods from the place where the said road shall cross any other road or street and be kept ringing or whistling until it shall have crossed said road or street * * *; and the corporation also shall be liable for all damages which shall be sustained by any person by reason of such neglect."

There was a sharp conflict in the testimony as to whether the signals were given in accordance with the statute as appellant's train reached the crossing, and the finding of the jury that they were not given cannot be disturbed on appeal by this court.

The determination of whether the failure to give the signals was the proximate cause of the injury was also a question of fact to be determined by the jury. The jury may have concluded, and reasonably so, that, had the signals been given, the deceased would have heard and heeded the warning and stopped instead of driving his team upon the track in front of the moving train. The fact that the deceased was himself guilty of contributory negligence did not prevent the jury from finding that the failure to give the signals was the proximate cause of the injury.

The doctrine of comparative negligence was applicable, and the jury were correctly instructed relative thereto in the following language:

"If you find from the evidence that the said Emmett Waters was in fact guilty of contributory negligence, still such contributory negligence on his part will not prevent a recovery herein, unless you find that his contributory negligence was equal to or greater than the negligence of the defendants. But if you should find that the defendant was guilty of negligence, and that the intestate was also guilty of contributory negligence, and that the contributory negligence on the part of the intestate was less than the degree of negligence of the defendant, then

your verdict should be for the plaintiff; but you should diminish the amount of the damages in proportion to the amount of such contributory negligence of the deceased.''

From what has already been said, it is unnecessary to discuss the question of discovered peril argued pro and con in the briefs of learned attorneys.

Appellant also contends that there is no substantial evidence in the record on which to base a finding for any particular amount of damages, and that therefore a finding of $1,250 was necessarily the result of speculation, conjecture, prejudice, and sympathy. We cannot agree in this contention. The modest amount of the judgment itself indicates that prejudice and sympathy were not the moving causes of the verdict. Had they been the basis for the verdict, the jury would have fixed a much larger amount than $1,250 for the death of a man. Neither can we agree that the verdict was the result of speculation and conjecture. Waters was in good health, able-bodied, industrious, sober, and, until the temporary separation from his wife, had expended practically all his earnings on his family and very little on himself. During the temporary separation, he had made small money contributions to them and had furnished them groceries. Before his death, he and his wife had made arrangements to live together in the future. He cultivated ten acres of land as a usual thing, and made four or five bales of cotton a year, and worked for others when he could find work to do. He had quite a long expectancy, and his girl child was hardly three years of age when he was killed. The duty rested upon him to maintain this child. Certainly the present value of such support and services as he might render them during his expectancy would amount to at least $1,250. The temporary separation of these negroes should not materially diminish the amount his wife, Easter, ought to recover, and their separation could not possibly affect the child's rights. In the case of *Sipple* v. *Gas Light Company*, 125 Mo. App. 81, 102 S. W. 608, a judgment in favor of a child for $2,000, whose parents were divorced and the custody of the child awarded to its mother, was sustained on the ground that the child's

rights were not impaired by a divorce decree between its parents.

The judgment is affirmed as to Easter and Betty Waters, and reversed and dismissed as to Sol Meyers.