LOUISIANA & ARKANSAS RAILWAY COMPANY *v.* O.'STEEN AND BARR.

4-4834

Opinion delivered November 29, 1937.

*House, Moses & Holmes, E. M. Anderson* and *Steve Carrigan,* for appellant.

*W. S. Atkins,* for appellees.

BAKER, J. The two suits here under consideration on this appeal arise out of an accident that occurred on May 9, 1936, a mile or two south of Hope, Arkansas, at a point where highway No. 29 crosses appellant's railway. O'Steen, driving an automobile for his employer, H. B. Barr, had driven to a CCC Camp, about six miles south of Hope and was returning upon highway No. 29, which

runs practically parallel with the railway track. About a mile and a half south of Hope, this highway upon which appellee was going in a northward direction curves and crosses the railroad at a right angle. At the point where the highway begins to curve, it is approximately four hundred feet to the railroad tracks, and there is some timber to the north along this curve upon the highway, so as to prevent open and clear vision toward the north, and this timber extends to a point within approximately one hundred or one hundred and twenty-five feet of the railroad. It is said also that the highway is banked on the north side as it approaches the railroad, so as to make that side approximately three feet higher than the south side where O'Steen says that the road was rough, so much so, that it was hard to hold the automobile in the road, that it was raining; and that although he approached the crossing cautiously, driving only twelve or fifteen miles an hour, he had gotten the front part of the car just upon the railroad tracks when the automobile was struck by the right front part of the locomotive; that the impact of the collision was such as to turn the automobile almost completely around, wrecking it, shocking him considerably, but not rendering him unconscious; that he alighted from the car while the train was still passing, and that after he was upon the ground twelve or fifteen cars passed. He tried to attract the attention of anyone who might be in the caboose, but failed to do so.

Though injured, he made his way south down the highway until he came to a filling station operated by two brothers, T. D. Byers and O. F. Byers. They took him to Hope. That night, an hour or two later, the car was picked up by a garage man, hauled or towed into Hope, where pictures were made of it the next morning. The morning after the accident, the garageman, or one of his employees, went to the place of accident and across the railroad tracks, on the opposite side from where the damaged car was picked up the night before, a part of the radiator of the car was found. Later, down the railroad, some two or three hundred feet, an air-cleaner, an-

other part of the automobile was picked up. Upon the trial of the case O'Steen testified to the facts substantially as above stated. In addition, he testified that he did not see any lights upon the train; that if it had lights they were defective; that as he approached the track he was watchful and careful; that he did not know of the approach of the train until it was within twelve or fifteen feet of him and that it was at that time too late to stop in time to avoid the collision; that the front part of the automobile had gone barely far enough to be struck by the right hand side of the engine.

Several witnesses for the appellant company testified. Their testimony was in substantial agreement. They had just left the city of Hope, had passed over a slight grade or hill, something like a quarter mile to the north; that their lights were in perfect condition; they had just been inspected before the train left; they were operating perfectly when they went over the crossing; the engineer, fireman and brakeman were all upon the engine at the time and all testified that a lookout was kept; that the appellee and his car were not seen at this crossing and that he was not struck by any part of the engine. They did not know that any accident had occurred, perhaps, until after they had completed the trip. Some of them were present when the engine was inspected at the end of the journey and there were no marks of any kind to indicate that the engine or any part of it had come in contact with this automobile. In addition to this positive and direct testimony, the plaintiff was contradicted by the two Byers brothers who operated the filling station just south of the place where the accident occurred, who testified to a statement made by O'Steen to them that night after the accident, to the effect that he had driven the car into the middle of the train upon this crossing. He also made the same statement, according to the testimony, to a special agent and claim agent of the railroad company and also to a reporter for a newspaper at Hope in explanation of how the accident occurred. Evidence was also offered by the mechanics at the garage to the effect that the front part of the

automobile had apparently been driven straight back as though it had been run squarely into some object, but it was also shown that the left-hand wheel upon the automobile was crushed or broken down and that the door on the left-hand side, that next to the driver, had been broken off. This conflicting testimony, much of it given in contradiction to O'Steen's testimony, was before the jury.

On account of the fact that a great number of instructions were asked and given by the court covering every phase of the case, so far as the issues were presented and urged upon the trial, we think it unnecessary to take these up for analysis and discussion. Some of them may not have been proper had specific objections been urged, but the principal objection made by the appellant to the instructions given, at the request of the appellee, was that they were not applicable to the facts in the case, because of the fact that the plaintiff had driven the car head on into the middle of the train. This objection, it will be observed, was upon a matter assumed to be true as a fact when it was, in truth, a proposition in issue upon the trial. There is, therefore, no good reason for detailed discussion of these instructions. It will be sufficient to say that the instructions given over the objections, as urged, were not improper in submitting the several issues for determination.

In passing, we will make this comment: That there was evidence of a substantial nature warranting the submission of the disputed questions to the jury. The jury decided these questions in favor of the appellee. The trial court gave approval to the verdict rendered. It may be that had we, the members of this court, been upon the jury we would have decided otherwise, or differently from what the jury decided.

It is evident that the trial judge believed that the jury had correctly decided the case according to a preponderance of the evidence. Otherwise it was his duty, not ours upon appeal, to grant a new trial therefor. See § 331, Crawford's Civil Code, p. 302, which is also § 1311,

Crawford & Moses' Digest, and now appearing as § 1536, Pope's Digest.

The authorities are numerous to the effect that it is the duty of the trial court to set aside the verdict which is against a preponderance of the evidence. See Crawford's Civil Code, p. 306. Numerous cases from this court support the above statement.

The argument urged in respect to the question under discussion is one properly made to, and for the consideration of, the trial court and not for the Supreme Court.

We are sometimes called upon to determine whether there may be substantial evidence to support the verdict when it is presented here upon appeal. We are not required to make an explanation or to determine the inscrutable or inexplicable mental processes of the jury in the determination of such matters as may be presented to them. We may suggest, however, that in this case there is some evidence that seemingly tends to support the testimony of the appellee, although he is very strongly and forcefully contradicted by other testimony. One of the physical facts is to the effect that a part of the radiator was discovered the next morning on the opposite side of the railroad track from where the car had been picked up the night before. Ordinarily this could not have happened had O'Steen driven the car into the middle of the train. This testimony was objected to for the reason urged that this portion of the radiator was found or picked up at a time too remote or long after the accident had occurred. In other words there had been time within which the particular portion of the radiator might have been carried or tossed across the railroad track. There is that possibility, but this was a rainy night, in the country, distant from where any one interested might have been. Whatever these possibilities were, they were known to, and no doubt appreciated by, the jury who must be presumed to have been men of ordinary information, possessed of reasonable intelligence and who would have considered and did weigh such facts and circumstances under the conditions under which they appeared to them. Besides, there were some

other physical facts. The left front wheel of the car was broken down, the door and chassis on the left side of the automobile suffered injuries more severe than happened to the other side. This might have happened had he run directly into the side of the car. They are facts which present themselves for interpretation by men of everyday experience and ordinary information. They are not questions of law that may be determined by us, to conclude the proposition of liability or nonliability. The jury may have found that since O'Steen or the automobile he was driving was not discovered by the three men upon the locomotive for the reason that his automobile never came within the range of the headlight, but that he drove upon the track almost under the light, so that it did not in fact strike directly upon the automobile, and they may also have determined that had the bell been ringing or the whistle been sounded, either the one or the other, as required by law, that O'Steen would have heard these before the train was within twelve or fifteen feet of this crossing and he could, therefore, have stopped, when the rate at which he was driving was considered, and, therefore, averted the injuries. Whatever the jury may have found, there was substantial testimony; the verdict was approved by the trial court, and we cannot say, as a matter of law, upon appeal, that the verdict is unsupported as it relates to O'Steen. O'Steen, himself, did not have to be free of contributory negligence in order that he might recover. The doctrine of contributory negligence applied to him and was properly submitted to the jury for a diminution of the damages he may have suffered. Section 11153, Pope's Digest. Many cases there cited by the digester illustrate the application of the legislative enactment. There is no reason to incorporate further citations or to re-examine them.

Besides, O'Steen was injured by the operation of appellant's train. Section 11138, Pope's Digest, is also applicable. See authorities cited by digester.

It is also urged that O'Steen's recovery in the sum of $2,500 is excessive. We do not think so. He has been

incapacitated in part, at least, continuously since the date of the injury, and the most favorable conclusion that can be drawn from the condition that now prevails, as a result of the injury, is that he must undergo an operation to remove a tumor formed at his knee, at or near the place most seriously injured. He will probably recover after this operation, but at the present time there is no doubt about his incapacity to a great degree, nor is there any serious doubt about the fact that he has continuously suffered since the time of injury. There is no law, or real reason, however, to compel him to submit to an operation and more particularly when the results therefrom are doubtful. Under the circumstances the recovery of $2,500 does not appear to be excessive.

But a different rule obtains as to the damage to the automobile, the property of the appellee, Barr. Barr sued for the value of this automobile as his damages in this accident. It is urged that the trial court erred in consolidating these two cases for trial. We do not think so. The evidence competent or material in the trial of one case, except to the extent of the injuries, is thoroughly competent in the other. It is true that there is a different rule in the law of liability, but this was taken care of by the trial court in the instructions given. The court erred, however, only to the extent that it should have determined as a matter of law, that O'Steen was guilty of contributory negligence in this accident and that his contributory negligence barred the recovery for the personal property. If O'Steen's sworn evidence is to be taken as true, then there could be no recovery for personal property, when he drove upon the railroad in front of this train.

Although the appellant's employees may not have sounded the whistle or rung the bell, that is not conclusive. He says that he did not see or hear the engine and train. This may be partly explained by reason of the fact that the highway was rough, that he was upon the lower side of it which was two or three feet lower than the north side. But if he was not driving more than twelve or fifteen miles an hour he did not need

·much more than the length of his automobile in which to bring his car to a full stop before entering upon the railroad track or coming so close or near to it as to be in imminent danger of being hit and damaged. It was his duty as he approached that track to have his automobile under such control that he could stop when the danger became imminent. He abandoned his claim of no lights or defective lights, therefore, a glance to the north in the last hundred feet before he reached the track would have disclosed the presence of the approaching train. He must be deemed to have seen what he should have seen.

We have already determined that the effect of this contributory negligence, so far as it affects O'Steen, was properly submitted to and determined by the jury. But since there was contributory negligence, this will prevent a recovery by Barr for the automobile.

The judgment in favor of O'Steen is affirmed. The judgment in favor of Barr is reversed, and the cause dismissed.