MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* MINIRTH.

4-6501                                          156 S. W. 2d 240

Opinion delivered December 8, 1941.

*Thomas B. Pryor, H. L. Ponder, Jr.,* and *H. L. Ponder,* for appellant.

*E. E. Kelley* and *Pickens & Pickens,* for appellee.

GRIFFIN SMITH, C. J.   Ike Minirth, owner of a 1931 Chevrolet automobile, permitted his brother, Dan, to use it in making a trip from Leachville to Heber Springs. Dan was accompanied by his brother-in-law, Wilmer Layson.   The automobile was struck by a northbound Missouri Pacific passenger train about 6 o'clock a. m., at a crossing just south of the depot at Hoxie.   Dan sustained physical injuries.   Judgments for $100 to compensate Ike for loss of his car, and $300 in favor of Dan, were entered on a jury's verdict based upon allegations that operatives of the train failed to ring the bell or blow the whistle.

Neither Dan nor Wilmer would say positively that signals were not given.   Wilmer testified that if the whistle was being sounded or the bell rung he did not hear it, but added, "I will not swear that they were not ringing, though."

Dan testified he ".  .  . did not hear the whistle blowing or the bell ringing." He also stated that he had not been on that part of the highway where the collision

occurred, and did not know there was a railway crossing at Hoxie.

Although there was evidence by a number of witnesses for appellant that engine warnings were given, Noel Locke, called by appellee, testified that the whistle was not blown for the crossing, and ". . . no signal was given by the engineer on that train." He did not testify that the bell was not being rung by the fireman. We may assume, however, that the witness was not informed that the bell is ordinarily operated by the fireman, and perhaps he intended to say that no signals were given—a statement at variance with numerous witnesses, but one the jury had discretion to accept, in preference to all other evidence on the point.

In appellee's brief it is conceded that if Dan had known he was approaching a crossing ". . . and had failed to look or listen, he would be guilty of such contributory negligence as a matter of law as would bar recovery."

It is undisputed that the red signal lights were operating—the so-called "wig-wag" warnings. The Minirth car was closed because snow was falling, the ground being covered to a depth of two or three inches. To prevent condensation on the windshield, each window was lowered about a quarter of an inch. The windshield wiper on the driver's side was functioning, but Wilmer was using a rag to keep the glass clean on the inside.

Dan testified that when he approached the crossing he did not notice the red lights "moving back and forth." He then added: "I was not looking for them, but I know what the wig-wag lights are like . . . and . . . they are danger signals."

There was no wiper on Wilmer's side. He testified: "I was wiping the windshield on Dan's side on the inside of the car when I saw the train—the light." When asked on cross-examination what he was using the rag for at the time in question, Wilmer said: "Well, to wipe the fog off from the inside." In response to the question, "You were looking straight ahead as you were coming to the crossing," Wilmer replied: "I was not.

I was wiping that windshield and watching what I was doing and looking out at the side there, looking at where I was wiping at the time, and I saw the light of the train when it was right up on us. I had not looked to the south''—the direction whence the train came.

Dan testified that in approaching Hoxie he ''rounded a curve'' on Highway 63, and could see, because the windshield wiper was ''working.'' He then added: ''I thought I was near the town. The first thing I knew was when the train hit the car.'' Although Dan denied familiarity with the highway or railway crossing at Hoxie, the object of his trip was to take Wilmer there in order that the latter might board a train to Heber Springs.

Accepting as a fact what the jury had to find in order to return a verdict—that no engine signals were given—the question for determination is, Was Dan Minirth's negligence equal to or greater than that of the railroad company?

In *Missouri Pacific Railroad Company* v. *Davis*, 197 Ark. 830, 125 S. W. 2d 785, there is the statement that it is inconceivable that a heavy train could have been proceeding noiselessly, even though the whistle was not sounded or the bell rung. See, also, *Missouri Pacific Railroad Company* v. *Price*, 199 Ark. 346, 133 S. W. 2d 645.

Result of the testimony is this: If Dan and Wilmer did not know they had reached Hoxie, it was because they were inattentive. If they did know it, they must also have known there was a railroad nearby. It is undisputed that the track was straight, and southward there was no obstruction. Wilmer, in wiping the windshield in front of the driver at the time of impact, necessarily interfered with Dan's vision; and Wilmer was not looking ''in any direction.'' The wig-wag signals were operating and could have been seen by an observant person. Dan's first consciousness of danger was when he saw the train light—presumably the headlight. All evidence points to but one conclusion: that is, the two men were preoccupied; they were not anticipating

danger; 'they were, relatively speaking, driving blindly because of the snow, or indifferently because they were not looking either in front, to the right, nor to the left. In *Chicago, Rock Island & Pacific Railway Company* v. *Sullivan*, 193 Ark. 491, 101 S. W. 2d 175, the late Mr. Justice BUTLER said: ''Assuming there were no signals given, this was not the proximate cause of the collision, which can be attributed only to the inattention of the driver of the automobile, and its defective condition.''

The engineer testified he was stopping for the station, and about two miles south of town slowed to thirty miles an hour.

Appellant's motion for an instructed verdict at the close of all the evidence should have been granted as to the judgment for personal injuries because of the contributory negligence of Dan Minirth, and as to the property damage because the driver's inattention was the proximate cause.

Judgments reversed and causes dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.