MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. COOK.

4-6650                                            158 S. W. 2d 699

Opinion delivered February 16, 1942.

*Thomas B. Pryor, H. L. Ponder, Jr.,* and *H. L. Ponder,* for appellant.

*Rowland H. Lindsey,* for appellee.

GREENHAW, J. This is an appeal from a judgment based upon a verdict of a jury for $200 for damages to a 1937 automobile which was struck by a northbound passenger train when the automobile was being driven by appellee in a westerly direction across the main line crossing in the town of McRae on May 30, 1940.

The evidence showed that appellee operated a barber shop on the east side of the railway tracks. About 10 a. m. on the day of the accident appellee started to take his brother to his home on the west side of town, and in doing so attempted to cross the tracks.

Appellee testified that when he was 35 or 40 feet from the track he changed gear, looked both ways and did not see a train approaching; that some 450 feet south of the crossing was a berry shed, and near it were stacks of ties and a seed house, and his vision was obstructed by reason thereof. He was driving very slowly. Witness further testified that he drove onto the crossing, which was rough, thereby stopping his car, and about that time someone shouted: "Look out, you are going to get killed." As he looked up the train was coming, and he and his brother jumped out, and the car was struck and dragged about 100 feet. Appellee did not hear the whistle blow nor the bell ring, and when he looked up and saw the train it was about 450 feet south, near the berry shed, and moving at a high rate of speed.

Appellee contends that the crossing was defective, in that gravel had been whipped out between the rails, creating a depression or hole into which his rear wheels slipped, and he could not get them out in time to prevent the automobile's being struck by the train.

The evidence showed that appellee had been using this crossing for a long time, and usually crossed it three or four times a day. He had no trouble in crossing it when he went to his barber shop on the morning of the accident.

Appellee's brother who was riding with him testified that when he first saw the train it was near the berry shed, and that in crossing from east to west one could see in a southerly direction down the track when within 40 or 50 feet of the crossing. "Q. What caused the accident was the fact that the train was so close on you when you heard the hollering that you and your brother left the car and jumped? A. Yes." If the whistle was blown and the bell rung witness did not hear them.

Guy Price, a witness for appellee, testified that he had lived at McRae nine years and was acquainted with the crossing south of the depot where the accident occurred. He was at home at the time of the accident and heard the whistle blowing continuously and heard the crash. He had crossed this crossing several times a day

for a long time, his home being about 100 feet south of the crossing, and it was rather rough—"Just about the kind of crossing you usually find over railroads."

A number of witnesses testified for appellant, including some of the train crew. The evidence of the trainmen showed that the engine crew was keeping a proper lookout, the whistle was blown and the bell rung for the distance required by law before reaching the crossing, and that when the automobile was driven onto the crossing the brakes of the train were placed in emergency position. Prior to the application of the brakes the train was making about 60 or 65 miles an hour.

Appellant's evidence showed that the crossing was in good condition at the time of the accident. The section foreman testified that not only was the crossing in good condition, but that he and his crew did not make any repairs on it after the collision and before the pictures were made which were introduced in evidence.

The station agent testified that he saw the pictures made on the morning after the accident, and that the crossing at the time the pictures were made was just as it was at the time of the accident, and if there had been any work on this crossing he would have known about it.

H. D. McClanahan, a mail carrier, testified that he was standing at the depot at the time of the accident and saw the train hit the automobile. The automobile stopped before it reached the crossing and again upon the crossing. He first heard the train about a mile and a quarter down the track, where it whistles for the mail clerk, and it kept whistling as it approached, and the bell was also ringing. He had been going over this crossing for a long time, and it was not rough, and the crossing as shown in the pictures looks like it did the day of the accident.

According to the pictures introduced in evidence, this was an ordinary crossing, without any visible signs of unnecessary roughness. The pictures show that the track for a long distance south of the crossing is straight, and the berry shed, tie piles and other obstructions referred to by appellee were not close enough to the track

to interfere with visibility to the south from points on or near the crossing. The berry shed was the building nearest to the track upon which the train was running. However, there was a switch track between the main line and the berry shed, with considerable space between the two tracks. There was also space between the switch track and the berry shed, and the berry shed itself was open so that visibility was not obstructed.

It would unnecessarily extend this opinion to quote at length from the testimony of all witnesses. We have reached the conclusion, after a careful examination of all the evidence, that appellee was guilty of negligence as a matter of law in driving upon the track when he had an opportunity to and should have observed the approach of the train.

Appellee sustained no personal injury, he and his brother having abandoned the automobile before the impact took place. This being an action to recover only for damage to personal property, appellee's negligence, which caused or contributed to the accident, precluded him from recovering for damages to his automobile. See *St. Louis-San Francisco Ry. Co.* v. *Haynes,* 177 Ark. 104, 5 S. W. 2d 737. The trial court, therefore, erred in refusing to direct a verdict in favor of appellant as requested.

In the case of *Chicago, Rock Island & Pacific Railroad Co.* v. *Batsel,* 100 Ark. 526, 140 S. W. 726, this court said: "Where the undisputed evidence shows that the injured person by looking or listening had an opportunity to see and hear the approaching train before the time of the accident, and that his opportunity was such that he could not have failed to have seen or heard the train in time to have avoided the injury, if he used ordinary care in looking and listening, then under the law he will be deemed to have seen and heard the train, although he should testify that he looked and listened and did not either hear or see the train. Under such circumstances the traveler is deemed to have seen or heard what is plainly to be seen or heard. . . . Such a doctrine was applied in cases where it was broad daylight and the engine or train in plain view and could unquestionably

have been seen if the traveler had looked in the direction whence it came.''

To the same effect is the case of *St. Louis, I. M. & So. Ry. Co.* v. *Prince,* 101 Ark. 315, 142 S. W. 499.

Giving the testimony on behalf of appellee its strongest probative value, in our opinion it falls short of that substantial character necessary to support a verdict for him. The only logical inference or conclusion from the evidence is that appellee was guilty of negligence which proximately caused or contributed to the collision and resulting damage to the automobile. In the case of *Missouri Pacific Railroad Co., Thompson, Trustee,* v. *Wright,* 197 Ark. 933, 126 S. W. 2d 609, this court said: ''Under the facts in this case we think it just as probable that the manner in which appellee was driving his car at the time of the accident was the proximate cause of the wreck and consequent damage as that a defect in the crossing might have been the cause. Juries may not base verdicts on speculation or conjecture.''

In the case of *Bradley* v. *Missouri Pacific Railroad Co.,* 288 Fed. 484, which involved a crossing accident in the town of Prescott, Arkansas, the Eighth Circuit Court of Appeals said: ''The only reasonable inference that can be drawn from their conduct is that they did not look, or, if they did and saw the train, deliberately took the chance of beating it over the crossing. If the former, they were guilty of gross negligence—if the latter, gross recklessness. If parties driving automobiles persist in gambling with death at railroad crossings, their estates should not be augmented by damages if death win. Care, not chance, is the requisite at railroad crossings.''

Appellee drove his automobile, on a clear day, onto the crossing in question, when according to the evidence he could have seen this train approaching this crossing for a long distance. The pictures of the crossing, the track, the berry shed and other alleged obstructions to vision showed conclusively that there was nothing to obstruct one's vision when approaching the crossing from the east. Hence the action of appellee in driving upon the crossing under such circumstances was not con-

sistent with the action of a person of ordinary prudence, and constituted negligence which bars him from a recovery in this case.

The judgment is therefore reversed, and, as the cause appears to have been fully developed, the same is dismissed.

HUMPHREYS, J., dissents.