Missouri Pacific Railroad Company, Thompson, Trustee,
v. Binkley.

4-7670                                    188 S. W. 2d 291

Opinion delivered June 11, 1945.

*Thomas B. Pryor, H. L. Ponder* and *H. L. Ponder, Jr.,* for appellant.

*Cunningham & Cunningham,* for appellee.

Holt, J. Appellee, Otis Binkley, sued appellant for damages to his automobile which was struck by one of appellant's trains at about 4 p. m., January 27, 1944, on what is known as Virgil McClain's crossing near Walnut Ridge. The only allegations of negligence relied upon were that appellant "was negligent in covering the ap-

proach to said railroad crossing with gumbo, which is commonly known to be slick when wet and would make a slippery and dangerous crossing and in allowing the space between the rails to become hollowed out, making a depression or trap for the wheels of a car,'' and ''because of the slick gumbo and because of the depression between the rails on the track, he was unable to move his car either forward or backward.'' There were no allegations of failure to give the statutory signals (§ 11135, Pope's Digest) or to maintain a proper lookout (§ 11144, Pope's Digest).

Appellant denied every material allegation in the complaint and further defended on the ground that appellee was guilty of contributory negligence. A trial resulted in a verdict for appellee in the amount of $750, and from the judgment comes this appeal.

For reversal, appellant argues that the evidence was not sufficient to support the verdict. After a careful review of all the testimony, we have reached the conclusion that appellant is correct in this contention.

The evidence, when viewed in its most favorable light to appellee, shows that he, in company with his wife, small daughter and mother-in-law, at about 4 p. m. on January 27, 1944, turned from the highway to drive his automobile over the crossing in question. The approach to the crossing was about 40 feet in length with a gradual elevation of about 4 feet. This approach was constructed of dirt, called ''gumbo,'' mixed with gravel or crushed rock. It had rained that morning and this approach was muddy. On both sides of the rails of the crossing were heavy planks, 10 inches wide, 5 inches thick and 11 feet 4 inches in length (4 in number). There was crushed rock between the rails which was from 2 to 4 inches below the top of the rails. As appellee began the ascent of the approach to the crossing, he shifted his car in low gear, and after looking south for an approaching train, proceeded slowly without stopping until the front wheels of his car had passed over the first rail of the crossing, when he put on his brake and stopped his car. Appellee said he could

not see the oncoming train because of the bright sunlight shining in his eyes.

Appellee's version of how the collision occurred, in his own words, is as follows: "So when I drove up, I was aiming to go across the crossing and just drove up and cleared that road that goes across the crossing, just drove by, you know, and the sun was shining bright and I just turned around there and my wife says: 'I have quite a lot of stuff to do over there,' and she says: 'Why don't you drive across the railroad over there?' So I backed up south down the highway and kind of reversed my car and I looked south, I remember, I looked as good as any man would look for a train coming and she looked, too. So I throwed my car in gear, in low and then started on up to the track and I threw it in second so I would have more speed at the dump and I had to go through water just about four inches deep and I noticed the speed was failing, getting slower and slower and she says: 'Look yonder.' Well, I didn't think I was on the track, you see the car was sitting on about a thirty-eight foot incline four feet up and I didn't think it was hardly that, but I knew there was something wrong. When she hollered, she says: 'Oh, look yonder.' I stopped as quick as I could press the brake, I eased the brake on and I saw the train. I says: 'I will just take my time here,' and maybe the train was between seventy and one hundred and fifty yards. I tried to go forward in the same gear, in second, that I'd driven in with and I was losing speed as I went on and it was standing then and I tried to go forward and it wouldn't go forward and I put it in reverse to back it and it wouldn't go. At that time my mother-in-law got out and I jumped and grabbed my little girl in the back seat and I had quite a little tussle getting her loose, my wife had her and she didn't know I had hold of her. So I jumped up on the running board and took her loose from my wife and my wife ran towards the road back west and I kept my eye on the train coming and I ran about the length of the car and when it hit I had cleared the back bumper and I think I made two steps and the train hit as I made the third one and I turned around and the train hit the car," and further, "Q. Was there any-

thing to the south that would bar your vision in any way? A. Yes, there was a signal station a little box house that cuts off the vision about seven feet wide. Q. Can you see down the track before you reach the little house which stands about ten feet from the track and if so how far? A. Yes, you can see as far as you can see when you leave the road. But I looked down and couldn't see it because the sun was so bright. I glanced and took a look and it was bright and I didn't see a thing. Q. Did the engineer do everything possible, do you think? A. Yes, I do. He was just like I was, he gave me time; he thought I was going to get it out of the way and when he saw I wasn't he did everything possible.''

Appellee's theory of the case was that the collision was due to the negligence of appellant in so maintaining the approach to the crossing that it became muddy and slick, slowed down the car, and this, in connection with the depression from 2 to 4 inches between the rails, caused his car to ''stall on the track.''

Appellant, on the other hand, argues that appellee was guilty of contributory negligence in failing to exercise the proper care and caution required of him, under the law, before driving onto the railroad track, a place of known danger.

As to this contention, appellee says in his brief: ''Appellant insists that the plaintiff should have seen the train before he reached the track, but anyone who has ever tried driving a car on a gumbo dump when it is wet and slick will understand that it takes all the attention and all the skill of a good driver to keep the car from skidding and going into the ditch, and that he has no time for looking for trains or anything else.''

Here, appellee sued for property damage only, and any contributory negligence on his part would preclude recovery under the law at the time this action arose. The comparative negligence rule, under § 11153 of Pope's Digest, applies only to personal injuries. In *Missouri Pacific Railroad Company* v. *Johnson*, 167 Ark. 464, 268 S. W. 31, we held: (Headnote 2) ''Negligence—Application

of Comparative Negligence Statute.—Crawford & Moses'
Dig., § 8575 (now § 11153 of Pope's Digest), establishes
the rule of comparative negligence in actions for personal
injury or death only, and does not apply to recovery of
damages to property." See, also, *Baldwin* v. *Waters,* 191
Ark. 377, 86 S. W. 2d 172.

The duty which rested upon appellant, in the con-
struction and maintenance of its crossings and ap-
proaches thereto, has been many times announced by this
court. In *St. Louis, Iron Mountain & Southern Railway
Company* v. *Smith,* 118 Ark. 72, 175 S. W. 415, it is said:
"It is the duty of every railroad company properly to
construct and maintain crossings over all public highways
on the line of its road in such manner that the same shall
be safe and convenient to travelers, so far as it can do so
without interfering with the safe operation of the road.
. . . An embankment constructed as a necessary ap-
proach to a railroad track is in legal contemplation a part
of the crossing, and should comply with the provisions
regulating crossings in general." See, also, *Missouri Pa-
cific Railroad Company, Thompson, Trustee,* v. *Wright,*
197 Ark. 933, 126 S. W. 2d 609.

Should it be conceded that appellant failed to con-
struct and maintain the crossing in question here, as re-
quired by law, we think appellee's own testimony conclu-
sively shows that he was guilty of contributory negligence
and is precluded from recovery as a matter of law. It
was the duty of the appellee, in the circumstances here,
before he drove his car onto this crossing, a known place
of danger, not only to look and listen for an oncoming
train, but since he admitted he could not see whether a
train was coming because of the sun shining in his eyes,
it then before driving on the track became his duty to stop
his car, or to place himself in such a position that he could
see the approaching train which was in plain view and
which his wife saw. His failure to exercise this precau-
tion on the facts constituted contributory negligence and
barred recovery. The rule announced in the recent case
of *Missouri Pacific Railroad Company. Thompson, Trus-
tee,* v. *Howard,* 204 Ark. 253, 161 S. W. 2d 759, controls

here. There we said: "The very fact that boxcars were spotted so near the crossing, as to cut off the view to the south, made it her duty, in the exercise of due care, to approach the main line track in such a way as to permit her to get a clear view to the south after the boxcars ceased to obstruct her view and to stop, if necessary, to avoid the danger. In other words, as the danger increases, the degree of care required to free one of contributory negligence in a crossing accident increases. As said in *L. & A. Ry. Co.* v. *Ratcliffe,* 88 Ark. 524, 115 S. W. 396: 'There is no imperative duty resting upon him to stop and look and listen. The duty is to look and listen. If this cannot be properly discharged without stopping, then he must stop. If it can be, then there is no necessity of stopping. *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549, 33 S. W. 1070.' See, also, *St. L. & S. F. Ry. Co.* v. *Stewart,* 137 Ark. 6, 207 S. W. 440; *St. L.-S. F. R. Co.* v. *Whitfield,* 155 Ark. 560, 245 S. W. 323; *Mo. Pac. Rd. Co.* v. *Hancock,* 195 Ark. 414, 113 S. W. 2d 489, and cases therein cited," and in *Missouri Pacific Railroad Company, Thompson, Trustee,* v. *Cook,* 203 Ark. 787, 158 S. W. 2d 699, we held: (Headnotes 1 and 2) Damages—Crossings.—Appellee was not entitled to recover damages to his automobile sustained in an attempt to cross appellant's tracks when he had an opportunity to and should have observed the approach of the train. Negligence—Contributory Negligence.—Since appellee drove his automobile onto the crossing on a clear day at a place where his view was unobstructed, and he might, if he had looked, have seen the train approaching, he was guilty of contributory negligence which precluded his recovery of damages to the vehicle." See, also, *Missouri Pacific Railroad Company, Thompson, Trustee,* v. *Minirth,* 203 Ark. 262, 156 S. W. 2d 240.

For the error indicated, the judgment is reversed, and since it appears that the cause has been fully developed, it is dismissed.

ROBINS, J., dissenting. I respectfully dissent from the majority opinion herein.

The majority holds that the judgment of the lower court should be reversed and appellee's cause of action dismissed solely because the testimony, as the majority opinion asserts, shows that as a matter of law appellee was guilty of such contributory negligence as to bar his recovery and that this contributory negligence consisted in the failure of appellee to stop his automobile, before starting over the crossing, so as to enable him to look up and down the track for a train.

But the majority is overlooking the fact that it was not appellee's failure to see the train before he started across the track that caused the collision, but that, according to appellee's version, which was not disputed and which was accepted as true by the jury, the collision was brought about by appellee's inability .(caused by the slippery condition of the roadway and the depression therein between the rails) to drive his car off the track after he did discover the approaching train.

While under the law it is the duty of a traveler to look and listen, and, if necessary in order to do so, to stop, before proceeding across a railroad track at a crossing, he is not required, merely because there is a train moving toward him in his range of vision, to wait until such train passes, if the train is far enough away to enable him, acting with due prudence, to go across the track safely. Elliott on Railroads, Vol. III, p. 559, and cases cited in Note 92.

Now the undisputed evidence in this case shows that, after appellee discovered the approaching train, he made an effort to move his car forward and to move it backwards, and, failing in both efforts on account of the condition of the roadway, he disembarked from the automobile, went to one of the rear doors thereof and took out his child and took the child to a place of safety, before the locomotive struck his car. Certainly all these operations, which took place between the time appellee saw the train and the time of the collision, consumed as

much as a minute of time. A car moving (as was appellee's) at the rate of five miles an hour travels four hundred and forty feet in one minute. Therefore, if appellee's car had not been stalled by reason of the slippery condition of the roadway and the depression between the rails, appellee could have, after he did see the oncoming train, driven his car a distance of four hundred forty feet before the locomotive reached the crossing, and would thereby have reached a safe place; and, of course, if appellee had before going on the crossing stopped his car and made the survey up and down the track (for failure to make which survey the majority of the court is denying him recovery) the train would have been even further away and he could have safely driven over the crossing and to an even greater distance beyond it.

So it seems to me that, instead of the evidence conclusively showing that negligence on the part of appellee caused or contributed to the collision, there is no evidence to indicate that any negligence of appellee brought about or contributed to bring about the collision. To say the least of it, after a jury, empowered under the constitution to settle finally all questions of fact, has said that appellee was not guilty of contributory negligence, I, as a judge, cannot say as a matter of law that the jury was wrong. It is significant, too, that, after all of appellee's testimony had been heard, appellant's counsel asked for a peremptory instruction in favor of appellant, not because of any evidence as to contributory negligence on the part of appellee, but solely on the ground that the evidence failed to show that appellant had been negligent in maintaining the crossing.

I am authorized to state that Mr. Justice McFADDIN and Mr. Justice MILLWEE join in this dissent.