FREDERICK TEPEL, Respondent, v. FRANK A. THOMPSON, Trustee, ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Debtor, Appellant, No. 40777—220 S. W. (2d) 23.

Division One, April 11, 1949.

Motion for Rehearing or to Transfer to Banc Overruled, May 9, 1949.

*M. G. Roberts, E. G. Nahler, C. H. Skinker, Jr.,* and *W. W. Dalton* for appellant.

*Reardon & Lyng* and *John H. Martin* for respondent.

DOUGLAS, J.—Plaintiff recovered judgment for $17,000 for personal injuries resulting from a collision between his automobile, which he was driving, and defendant's train at a crossing on United States Highway 67 in Arkansas.

The question for decision is whether, according to the law of Arkansas, plaintiff made a submissible case under either of the two theories upon which he submitted his case to the jury.

The two grounds on which plaintiff submitted his case were first, that the railroad was negligent in not stopping or slackening the speed of the train or sounding a warning after it saw plaintiff was in a position of peril; and second, that the railroad failed to give the statutory crossing warning. As to the first ground the railroad contended it kept a proper lookout but was unable to prevent the accident after it discovered plaintiff in peril. On the issue of the statutory warning, the railroad asserted that the accident was caused by plaintiff's contributory negligence which was equal to or greater than any negligence which the railroad might have been guilty of in not giving the required warning, so under the Arkansas Comparative Negligence statute plaintiff may not recover. We hold that under the law of

4

Arkansas the railroad's contentions must be sustained, and the judgment for plaintiff must be reversed.

As to plaintiff's first charge of negligence, we find Arkansas has a statutory requirement that operators of trains shall keep a constant lookout for persons upon the track. It has been held that "on the track" includes approaching the track.

The Lookout statute (Sec. 11144, Pope's Digest) provides: "It shall be the duty of all persons running trains in this State upon any railroad to keep a constant lookout for persons and property upon the track of any and all railroads, and if any person or property shall be killed or injured by the neglect of any employee of any railroad to keep such lookout, the company owning or operating any such railroad shall be liable and responsible to the person injured for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence to the person injured, where, if such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril, and the burden of proof shall devolve upon such railroad to establish the fact that this duty to keep such lookout has been performed."

This court in Thrower v. Henwood, 351 Mo. 663, 173 S. W. (2d) 861 stated the rule to be deduced from the Arkansas decisions construing the statute was as follows: "(1) That the injuries were sustained from the operation of a train, by one 'upon the track;' (2) that the injured party was in peril; (3) ▇▇▇ and that his danger was discoverable so the injury might have been thereafter averted through a proper lookout, if one had been kept by the train operatives. When that showing has been made, the burden shifts to the defendant railroad to show by preponderating evidence either that the required lookout would have been unavailing, or that it was kept and the injuries resulted notwithstanding from the party's own sole negligence."

▇▇ The only evidence we have on this issue was produced by the railroad. The fireman testified he had a full view of the crossing over Highway 67 from his side of the cab. He first saw plaintiff's automobile following a truck when the vehicles were about 450 to 500 feet from the crossing. At that time the train was about the same distance from the crossing. The truck and plaintiff's automobile were going about forty-five. The train was travelling from thirty to thirty-five. The truck got safely over the crossing ahead of the train. However, as plaintiff's automobile approached the crossing it slowed down from forty-five to fifteen. The fireman did not notice plaintiff stop his automobile as plaintiff testified he did. However, the fireman assumed plaintiff was going to stop before crossing the track because the train was in full view of the automobile, the engine whistle was blowing, the bell was ringing, and plaintiff was

decreasing his speed. When the fireman realized plaintiff was not going to stop, he "called over" to the engineer, giving him the signal to stop the train. But before the engineer could put on the brakes plaintiff ran into the side of the engine with the front end of his car as the engine was crossing the highway. Under this evidence we hold there was no showing the railroad could have prevented the accident after plaintiff was seen in peril even though the railroad was keeping a constant lookout as the train approached the crossing. We hold as a matter of law the interval of time after plaintiff was first in a position of peril and up to the time he collided with the engine was too slight, not more than a few seconds, to permit the railroad to avoid the collision.

The rule appears to be well settled by the Arkansas Courts that those keeping a lookout may assume that a person, before crossing a track, will exercise due care for his own safety, and ordinarily no duty rests upon the railroad to take any action to stop or slacken the train "until it reasonably appears that such person is entering, or about to enter, a place of danger." Missouri P. R. Co. v. Brewer, 193 Ark. 754, 102 S. W. (2d) 538. And see Missouri P. R. Co. v. Rogers, 184 Ark. 725, 43 S. W. (2d) 757; Missouri P. R. Co. v. Campbell, 200 Ark. 1056, 143 S. W. (2d) 9; and Missouri P. R. Co. v. Merrell, 200 Ark. 1061, 143 S. W. (2d) 51. In the latter case the court said that there was no duty on a railroad to stop or even slow down the train for a person in a place of safety unless it could be done after the discovery the person had come into a place of peril.

There is no evidence whatever in the instant case that the accident could have been prevented by slowing or stopping the train after plaintiff was in peril. Plaintiff's peril arose when it became apparent to the fireman, in the exercise of due care in maintaining a careful lookout, that plaintiff was not going to stop. At that moment the fireman acted—but it was then too late to prevent the accident because the train reached the crossing first and plaintiff's automobile ran head on into the side of the engine. The case of St. Louis-S. F. R. Co. v. Beasley, 205 Ark. 688, 170 S. W. (2d) 667 is distinguishable on the facts.

Plaintiff also submitted his case on the ground the railroad did not give a warning by bell or by whistle as required by statute. Section 11135, Pope's Digest. Plaintiff testified he heard no such warning. Taking plaintiff's testimony as positive evidence no warning was given, which fact was sharply disputed, still under the facts of this case we may not find the failure to give such warning was the proximate cause of the accident. Even if the railroad was negligent in that respect the proximate cause of the accident was plaintiff's own negligence.

Plaintiff testified the truck which was travelling ahead of him along the highway stopped with its front end five to ten feet from the

tracks. This caused him to stop. He stopped six to eight feet behind the truck, so that the front of his car when he was stopped was thirty to thirty-five ▮ feet from the tracks. The crossing was on the same level of the highway. While stopped plaintiff looked first to the left, and then to the right. The sun was not shining, but it was a clear day with good visibility. He said he could see a distance of 200 feet to the right, the direction from which the train was approaching the highway, but he did not see the train. As the truck went across the tracks plaintiff started his automobile proceeding at five to six miles per hour. As he reached the track he heard a noise, looked to the right and saw the train "right on top of him." The front end of his automobile ran into the side of the locomotive just behind the pilot. The locomotive was a big heavy steam engine belonging to the 720 class and was pulling six cars, five freight and one passenger coach. It is undisputed that the train was going from thirty to thirty-five.

On this state of facts the only reasonable inference which can be drawn is that plaintiff either failed to look, or if he did look he looked so negligently that he did not see what was there to be seen. Under these circumstances his own negligence was the proximate cause of his injury. As the Arkansas Court said in Missouri P. R. Co. v. Dennis, 205 Ark. 28, 166 S. W. (2d) 886: "This court, in Chicago, R. I. & P. R. Co. v. Batsel, 100 Ark. 526, 140 S. W. 726, 728, announced the rule as to the duty of a traveler in this language: 'The traveler must not only look and listen for the approach of trains before he goes upon the track, but he must continue to do this until he has passed the point of danger. Railway Co. v. Cullen, 54 Ark. 431, 16 S. W. 169; Little Rock & Fort S. Ry. Co. v. Blewitt, 65 Ark. 235, 45 S. W. 548; St. Louis & S. F. Ry. Co. v. Crabtree, 69 Ark. (134) 135, 62 S. W. 64. Where the undisputed evidence shows that the injured person, by looking or listening, had an opportunity to see and hear the approaching train before the time of the accident, and that his opportunity was such that he could not have failed to have seen or heard the train in time to have avoided the injury if he had used ordinary care in looking and listening, then, under the law, he will be deemed to have seen and heard the train, although he should testify that he looked and listened, and did not either hear or see the train. Under such circumstances, the traveler "is deemed to have seen or heard what is plainly to be seen or heard." ' In the instant case, even though the statutory signals were not given, this was not the proximate cause of the collision and consequent damages."

In further support of our ruling on this issue under similar facts see: Louisiana & A. R. Co. v. O'Steen, 194 Ark. 1125, 110 S. W. (2d) 488; Mo. P. R. Co. v. Cook, 203 Ark. 787, 158 S. W. (2d) 699; Mo. P. R. Co. v. Davis, 197 Ark. 830, 125 S. W. (2d) 785. And see Mo. P. R. Co. v. Binkley, 207 Ark. 933, 188 S. W. (2d) 291.

Following the principles announced in the above decisions we must hold that the proximate cause of the accident was plaintiff's negligence even though the railroad was also guilty of negligence in failing to sound the required warning. On this issue the trial court should have found, that plaintiff's negligence exceeded the railroad's negligence. Or, to use the words of the Comparative Negligence statute the trial court should have found that plaintiff's negligence was not "of less degree than the negligence of the . . . railroad causing the injury."

. It is true, as plaintiff asserts, that ordinarily the question of a plaintiff's contributory negligence is one of fact for the jury.

Under the Arkansas Comparative Negligence statute (Section 11153, Pope's Digest) a plaintiff may recover despite his contributory negligence. It is the jury's province, in most cases, to compare and weigh the evidence and to determine the relative degrees of negligence of the parties. But where the question turns on the legal sufficiency of the evidence to support the verdict, as it does here, then the question becomes one of law for the court. The statute does not attempt to take from the court the right, where no other inference can be drawn from the evidence by reasonable men, to decide as a question of law that the evidence of plaintiff's negligence equaled or exceeded that of the railroad. Mo. P. R. Co. v. Davis, 197 Ark. 830, 125 S. W. (2d) 785; Mo. P. R. Co. v. Price, 199 Ark. 346, 133 S. W. (2d) 645; Mo. ██ P. R. Co. v. King, 200 Ark. 1066, 143 S. W. (2d) 55; Lloyd v. St. L. S. W. R. Co., 207 Ark. 154, 179 S. W. (2d) 651; St. L.-S. F. R. Co. v. Horn, 168 Ark. 191, 269 S. W. 576.

In the cases of Mo. P. R. Co. v. Shell, 208 Ark. 70, 185 S. W. (2d) 81, and same v. Diffee, 212 Ark. 55, 205 S. W. (2d) 458, the court held under the facts of each case the contributory negligence of plaintiff was a question for the jury. But in those cases the facts showed that even though plaintiff looked carefully, still he may not have seen the train approaching, so they are not apposite under the facts of this case.

Holding, as we must, that plaintiff failed to make a submissible case under the Arkansas law on both of his charges of negligence, it follows the judgment should be reversed.

Judgment *reversed*. All concur.